**Robert Donald STEVENSON, Appellant,**

v.

**Carol Ann STEVENSON, Appellee.**

**Nos. 59682, 58763 and 58780.**

Court of Appeals of Oklahoma, Division No. 2.

Feb. 14, 1984.

Released for Publication by Order of Court of Appeals April 9, 1984.

Mark Henricksen, Erbar, Henricksen & Erbar, El Reno, for appellant.

Virginia Henson, Henson, Laster & Henson, Shawnee, for appellee.

MEANS, Presiding Judge.

Both Husband and Wife have appealed from the property division in this divorce action. Wife also appeals from the award of attorney's fees. Having reviewed the record and applicable law, we reverse in part and remand in part.

Husband sued Wife for divorce on grounds of incompatibility. Wife cross petitioned, asking for divorce on the grounds of extreme cruelty. Wife named J-Rae Oil Field Construction as a third party defendant, contending that Husband owned an interest in J-Rae and that the corporation was hiding his interest to defraud her of jointly acquired property.

The trial court heard both actions in the same proceeding. At the end of the trial J-Rae entered a demurrer to the evidence on the fraud action, which was sustained. The trial court granted the divorce, awarded custody of the minor child, ordered visi-

tation rights, and awarded support alimony. These rulings are not on appeal. However, both parties have appealed from the property division asserting that the division was inequitable.

At a later date, the court conducted a hearing on the subject of attorney's fees. The court awarded Wife an attorney's fee of $3,000, and ordered defendant Wife to pay the third party defendant J-Rae an attorney's fee of $5,689.49. Wife has appealed both these awards.

On appeal, Husband raises the following propositions of error:

(1) The court erred in awarding Husband's separate property;

(2) The court abused its discretion in an inequitable distribution of jointly acquired debts and assets;

(3) The court erred in requiring Husband to relieve Wife of marital debts;

(4) Husband was prejudiced by trying the third party action in the divorce proceeding.

Wife raises the following issues:

(1) The court abused its discretion in its determination of a fair and equitable property division;

(2) The court erred in failing to award Wife a more substantial attorney's fee;

(3) The court erred in requiring Wife to pay third party defendant J-Rae's attorneys' fees.

I

■ In reviewing a property division, the court will not set aside a judgment nor substitute its own judgment for that of the trial court, absent a clear abuse of discretion. *Peters v. Peters*, 539 P.2d 26, 27 (Okl.1975).

We note at the outset that the trial court made no specific findings concerning the value of any of the property. The trial judge also failed to determine whether the property was separate or jointly acquired. The trial judge merely divided the property in the following manner:

| Property Awarded to Wife | Property Awarded to Husband |
|---|---|
| Marital Residence 803 N. Bickford | Rent House 105 W. Caddo |
| Rent House 801 N. Bickford | Old Ice Building West Caddo |
| Stradivari Sterling (separate property) | Pit Stop Choctaw Avenue |
| Jewelry (includes $225 watch belonging to Wife's brother and $2,400 worth of jewelry which was Wife's separate property) | E-Z Way Laundry |
| | Warehouse (Bread Building) |
| | Medici Sterling |
| 1977 Oldsmobile | Life Insurance Policies |
| All household furnishings at both houses | Jewelry |
| | All mineral interests under all property |
| Approximate value: $60,275 | Approximate value: $270,590 |

From the examination of the record, we have determined that each party owned the following property prior to marriage.

Husband—All property except the Pit Stop and rent house at 801 N. Bickford, including the lot on which the marital home was later located. Although the testimony is unclear, it appears that the only structure on any of the property was the Old Ice Building. Buildings were constructed or moved on the property later. Husband paid $5,000 for the Old Ice Building and the other lots, 46 days before marriage.

Wife—$60,000 in savings; new car; sterling (now valued at $7,519.07); jewelry (valued at $2,400).

The trial court heard conflicting testimony as to the values of the real property. The court heard no evidence concerning the values of the household furnishings, automobile, or mineral interests. Although the judge heard evidence on the values of rental income, he failed to mention these in the decree. The trial judge neither established a value for, nor awarded any of the following property: equipment and inventory in the Pit Stop, equipment and inventory in the laundry, the partnership interest in the Pit Stop, an IRA account apparently in Husband's name, and a truck held in Husband's name.

Husband first alleges that the marital residence was his separate property at the time of the marriage. However, evidence shows that Husband purchased the *lot* 46 days prior to marriage. Later a house was moved to the lot and refurbished from joint funds and funds provided by Husband's father.

■ As stated numerous times by the courts, the property acquired by separate funds before marriage loses its character as separate property when used as the marital residence. See *Umber v. Umber*, 591 P.2d 299, 302 (Okl.1979); *DuBoise v. DuBoise*, 418 P.2d 924, 927–28 (Okl.1966); *Gist v. Gist*, 537 P.2d 460, 462 (Okl.App. 1975).

■ The lot at 803 N. Bickford was purchased in anticipation of marriage. Both parties contributed to the improvements of the home. As such, it became joint property.

Husband next argues that the debts and assets of the parties were unfairly distributed. First, it must be noted that Husband's brief completely misstates the property awarded to Wife. Husband states that Wife was awarded 105 West Caddo—a rent house. This rent house was awarded to *Husband*. Wife was awarded the rent house at 801 N. Bickford, valued by Husband's appraiser at $5,000.

Wife testified that she spent her own funds to purchase the house and refurbish

it. While Husband disagreed with Wife, there is no evidence that the trial judge considered it separate property. Both this house and the marital home were apparently considered jointly acquired property.

Regarding the debts of the parties, in October 1977, Husband and Wife executed a promissory note for $180,000 to the First National Bank of El Reno. This note was secured by a real estate mortgage on all the jointly acquired property. At the same time Wife and Husband's father also became guarantors on a continuing guarantee for Husband's indebtedness. At the time of trial the 1977 note was in default in the amount of $150,176.41.

In February 1982, Husband executed another note for $269,249.72, secured by equipment and inventory at the Pit Stop. Wife's name does not appear on this note which was guaranteed by Husband's father. Wife contends she is only secondarily liable as a guarantor on the 1982 note by the terms of the continuing guarantee she signed in 1977.

■ Concerning these debts, the trial court ordered:

> The Court further finds that the Plaintiff herein is to assume and pay all the jointly acquired debts and obligations outstanding at the time of this decree and to hold Defendant harmless on the same; he is further directed to undertake such steps as may be necessary to release the Defendant from contingent liability on such debts, including replacing or adding collateral to existing notes, obtaining new guarantors, refinancing, etc.

Husband states that the parties were responsible for jointly acquired debts of over $400,000. Wife's name does not appear as a debtor on the $269,294.72 note. Wife's liability on this note is based solely on the continuing guarantee agreement she signed in 1977. The security agreement for the 1982 loan lists Husband's father as guarantor and fails to mention Wife. Furthermore, the note is secured by inventory and equipment out of the Pit Stop and lists "operating" as the purpose. According to

both Husband's and Husband's father's testimony, Husband owns 10 percent of the Pit Stop while his father owns 90 percent. This obligation would seem a separate debt of Husband and one for which he only has 10 percent of the liability. Furthermore, Husband had filed for divorce more than a year earlier. This loan cannot possibly be considered a jointly acquired debt in furtherance of any marital goal. The 1982 loan is Husband's separate debt for which he is primarily liable.

■ Wife's name does appear on the note executed in October 1977. Wife's name also appears on the real estate mortgage as a grantor and on a continuing guaranty agreement as a guarantor. Although Wife testified that she did not remember signing the note, mortgage and guaranty, she did not deny the existence or authenticity of her signature. We find this debt to be jointly acquired.

■ Both Husband and Wife state that the property division is inequitable, but neither party suggests what an equitable division might be. Husband states that the estate is bankrupt, but there is no evidence of this. The bank admitted that it had not even tried to collect on the two notes, due to the guarantee of Husband's father.

Even after subtracting the jointly acquired debt from Husband's award, our estimates as to property values show that Wife's award is valued at less than half that of Husband's. However, without findings of fact as to the values of all the property, this court cannot determine the equitableness of the trial court's order.

As stated in *Bouma v. Bouma*, 439 P.2d 198, 201 (Okl.1968):

> The record in this case is insufficient to provide means for determining an equitable disposition of these parties' affairs without risk of creating further inequity. For this reason that portion of the judgment purporting to fix an equitable division of jointly acquired property must be reversed for further proceedings.

The judgment as it relates to the property division is reversed. The cause is remanded to the trial court with directions to determine the value and character of the property and enter an equitable division.

## II

Concerning the jointly acquired debts, the court ordered Husband to be solely responsible. Husband contends the court had no power to force him to change contractual relations between Wife and third parties, citing *Gardner v. Gardner*, 629 P.2d 1283 (Okl.App.1981), and *Sessions v. Sessions*, 525 P.2d 1269 (Okl.App.1974).

Wife argues that the order merely contemplates a good faith effort on Husband's part to obtain a release of Wife by means acceptable to third party creditors. However, the language in the order is stronger than Wife suggests, stating:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED by the Court that Plaintiff is ordered to undertake such steps as may be necessary to release the Defendant from contingent liability on such debts, including replacing or adding collateral to existing notes, obtaining new guarantors, refinancing, etc.

Husband is correct in stating that the court has no power to determine Wife's contractual duties and rights in relation to third parties. This part of the decree must be modified to preclude any doubts as to the court's jurisdiction. On remand to the trial court for a re-evaluation of the property division, the trial judge may order Husband to hold Wife harmless as to the debts, but cannot enter orders affecting Wife's liabilities to parties not before the court.

## III

Husband alleges that the trial court erred in combining the divorce action and Wife's third party action against J-Rae in the same proceeding. Husband claims he was prejudiced by trying both causes together; yet he cites to no incident in the entire trial where prejudice is evident. He merely states he was harmed by his father's cross examination.

We note first that error will not be presumed but that it is the duty of the complaining party to show in what respect he was harmed. *Batts v. Carter*, 312 P.2d 472 (Okl.1957). We further note that this court will not search the record to discover errors. *Sattler v. Coulter*, 307 P.2d 838 (Okl.1957).

Finally, at the end of trial the court sustained J-Rae's demurrer to the evidence finding that Husband and Wife owned no interest in J-Rae. Husband cannot assert he was prejudiced where there is no likelihood that the property division would have been different had the causes been tried separately. Any possible error in trying the actions together was harmless. See, *Falletti v. Brown*, 481 P.2d 744 (Okl.1971).

## IV

Wife raises two propositions of error concerning attorneys' fees. Wife states that the trial court erred in requiring her to pay the third party defendant's attorney's fees.

Wife's cause of action against J-Rae was essentially for fraud and deceit. Damages for these actions do not include attorney's fees. In Oklahoma attorney's fees are not recoverable unless provided by contract or statute. *Joy v. Giglio*, 208 Okl. 50, 254 P.2d 351, 353–54 (1953).

The trial court had no authority to award attorney's fees. The award to third party defendant J-Rae is reversed.

Wife further contends that the court erred in awarding her only $3,000 as attorney's fees, when her attorney submitted evidence of $20,000 worth of work. At the hearing on attorney's fees, Wife's previous attorney presented evidence of 122.3 hours of work and stated that he normally charged $100 an hour and $150 an hour for trial time involved in a difficult case. He stated that he considered this case difficult and gave his reasons.

However, on cross examination Wife's attorney testified that 32.1 hours of the

work was performed by a legal assistant who does not have a college degree. Wife's attorney stated that he also charged $100 for these hours.

Expert witnesses disagreed as to whether the case was difficult. The experts also disagreed as to whether it was appropriate to charge $100 per hour for work done by a legal assistant. The experts agreed that $100 to $150 was not an unreasonable fee for the work done by the attorney.

In a letter to Wife's attorney the trial judge stated: "Defendant is awarded the sum of $2,095.73, for costs expended as well as an attorney fee of $3,000.00." This same language is found in the order. The judge made no statement or findings as to how he arrived at this figure which is less than 15 percent of the amount requested.

As stated in *State ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659, 663 (Okl. 1979):

> When a question on appeal presents the issue of reasonableness of attorney's fees awarded by the court, abuse of discretion by the trial judge is the standard of review. Therefore, the trial court should set forth with specificity the facts, and computation to support his award.

In the instant case, the court made no such specific findings. The award of attorney's fees to Wife is reversed and remanded to the trial court to set out specific findings as to the amount of attorney's fees. We direct the trial judge's attention to *Oliver's Sports Center, Inc., v. National Standard Insurance Co.,* 615 P.2d 291 (Okl.1980), for guidance in this area.

BACON and BOYDSTON, JJ., concur.