UNIVERSAL ASSURORS LIFE INSURANCE COMPANY, APPELLEE, V. BERTHA HOHNSTEIN, APPELLANT, AND ELIZABETH A. HALSTEAD, APPELLEE.

500 N.W.2d 811

Filed April 29, 1993.   No. S-91-047.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellant.

James R. Hancock, of Hancock & Denton, P.C., for appellee Halstead.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The death of the decedent, David A. Halstead, obligated the plaintiff-appellee interpleader, Universal Assurors Life Insurance Company, to pay benefits under the provisions of three separate certificates of credit life insurance it had issued in favor of First State Bank, Scottsbluff, Nebraska, and others. Both the decedent's mother, the defendant-appellant claimant, Bertha Hohnstein, and the decedent's former wife, the defendant-appellee claimant, Elizabeth A. Halstead, demand the residual proceeds, that is, the amount of benefits exceeding

the sums Universal remitted to the bank. Having paid the residual proceeds into court, Universal was dismissed from the action, and the cause then proceeded to adjudication upon the reciprocal motions for summary judgment filed by the two claimants. The district court overruled the mother's motion and sustained the former wife's motion. The mother's three assignments of error merge to assert that the district court erred in so ruling. We affirm.

## II. FACTS

On August 10, 1988, the decedent and the former wife indebted themselves to the bank and, for a single premium, purchased the three aforementioned certificates of insurance, which were issued under and pursuant to an agreement between Universal and the bank entitled "Debtor-Creditor Group Master Policy Single Premium Term Life Insurance - Non-Participating." The master policy provides, in pertinent part:

> [Universal] will pay, subject to all terms and conditions of this policy, to the [bank] the amount of insurance in force hereunder on the life of such Debtor at the time of such death, to reduce or extinguish the unpaid indebtedness and where the amount of insurance exceeds the unpaid indebtedness, the excess amount will be paid to a beneficiary other than the [bank], if living, named by the insured Debtor or to the estate of the insured Debtor.

Each of the three certificates named the decedent as "Insured Debtor," the former wife as "Insured Joint Debtor," and the bank as "Irrevocable Creditor Beneficiary." In an area denominated "Second Beneficiary," each certificate reads:

> David A. Halstead - Beneficiary Elizabeth A. Halstead
> Elizabeth A. Halstead - Beneficiary David A. Halstead
> James D. Halstead.

The last named individual, born January 6, 1986, is the minor child of the debtors.

On November 16, 1989, the former wife filed a dissolution of marriage action which resulted in a decree of dissolution being entered on February 2, 1990. Through incorporating by reference the decedent's and the former wife's property

settlement agreement, the decree provides, in relevant part:

> The [former wife] and [the decedent] will keep all items of personal property currently in their respective possession. Each party will hold the other harmless from any liability upon the personal property in their possession.
>
> [The decedent] shall receive the title and possession of the [marital residence] and [the former wife] will sign a Quitclaim Deed to [the decedent] regarding said property. [The decedent] shall hold [the former wife] harmless from any liability arising from any encumbrance upon said real property.

The decree makes no specific references to the debt owed the bank or to the Universal certificates, nor does it relate the insured debt to the marital residence.

Following the entry of the dissolution decree, the decedent, on August 6, 1990, issued a notarized letter directed to Universal, which referenced the three certificates of insurance and recited: "Because of my divorce, I hereby authorize you to change the beneficiary designations on the above [certificates] from my [former wife] to my mother . . . ."

The decedent died August 10, 1990, as a result of injuries sustained in an accident. After Universal paid the bank the amount of the unpaid debt, there remained benefits totaling $6,067.10 due under the three certificates.

## III. ANALYSIS

We begin by noting that although each certificate names the Halstead child as some sort of beneficiary, he was not made a party to this action. As a consequence, this litigation does not affect any interests he may have in the matter.

### 1. EFFECT OF DISSOLUTION DECREE

The decedent's mother asserts that because the marital residence was awarded to the decedent subject to the liability for any encumbrance thereon, for which liability he was obligated to hold the former wife harmless, the decedent became the sole owner of the insurance certificates and could do with them as he chose. Such, however, is not the case.

In the first place, as noted in part II, the decree in no way ties the insured debt to the marital residence. In reviewing the res

judicata effect of dissolution decrees in later actions, we have declared:

> "[N]either what the parties thought the judge meant nor what the judge thought he or she meant, after time for appeal has passed, is of any relevance. What the decree, as it became final, means as a matter of law as determined from the four corners of the decree is what is relevant."

*Metropolitan Life Ins. Co. v. Beaty*, 242 Neb. 169, 173, 493 N.W.2d 627, 630 (1993). Accord *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986).

But even if the decree were to have related the debt to the marital residence, it only orders the decedent to hold the former wife harmless from the liability; it does not, nor could it, relieve the former wife of liability to the bank.

Although it appears we have not heretofore been called upon to rule on the effect of a dissolution decree upon a dissolution party's liability to a creditor, we have held that a contract for the lease of school land could not be altered by a dissolution decree and made enforceable against the other parties to the lease. *Kidder v. Wright*, 177 Neb. 222, 128 N.W.2d 683 (1964); *State v. Kidder*, 173 Neb. 130, 112 N.W.2d 759 (1962). Moreover, in *Baker v. Baker*, 201 Neb. 409, 267 N.W.2d 756 (1978), this court held that a dissolution court could not affect the rights of the transferees of gifts who were not before the court. We now specifically adopt the holdings of numerous other jurisdictions that a dissolution decree does not change a dissolution party's liability to a creditor. *Bourdon v. Bourdon*, 119 N.H. 518, 403 A.2d 433 (1979); *Kujawinski v. Kujawinski*, 71 Ill. 2d 563, 376 N.E.2d 1382 (1978); *Arneson v. Arneson*, 38 Wash. 2d 99, 227 P.2d 1016 (1951); *Stevenson v. Stevenson*, 680 P.2d 642 (Okla. App. 1984); *Wileman v. Wade*, 665 S.W.2d 519 (Tex. App. 1983); *Glasscock v. Citizens Nat. Bank*, 553 S.W.2d 411 (Tex. App. 1977); *Branch Banking and Trust Co. v. Wright*, 74 N.C. App. 550, 328 S.E.2d 840 (1985) (review allowed at 314 N.C. 662, 335 S.E.2d 321; however, ex-wife withdrew her appeal as a party to the further appeal to the North Carolina Supreme Court, 318 N.C. 505, 353 S.E.2d 225). Thus, the former wife remained personally liable to the bank.

## 2. RIGHT TO CHANGE BENEFICIARY

Neb. Rev. Stat. § 44-370 (Reissue 1988) provides:

> A life insurance company may provide that the amount to become due under a policy shall be paid in installments to a beneficiary therein named. . . . Any person *holding a policy* in any such company may, without the consent of the beneficiary, unless the appointment of such beneficiary be irrevocable, either sell and surrender the same to the company, or pledge or assign the same as security for a debt . . . or, with the consent of the company, he may change his beneficiary unless the appointment of such beneficiary be irrevocable.

(Emphasis supplied.)

The task at this point is to determine what is meant by the statutory phrase "person holding a policy." As a question of statutory interpretation, the matter is one of law in connection with which we, as an appellate court, have an obligation to reach an independent, correct conclusion irrespective of the determination made by the trial court. *State v. Saulsbury, ante* p. 227, 498 N.W.2d 338 (1993); *Curry v. State ex rel. Stenberg*, 242 Neb. 695, 496 N.W.2d 512 (1993); *Northern Bank v. Federal Dep. Ins. Corp.*, 242 Neb. 591, 496 N.W.2d 459 (1993).

> The party who enters into the contract of insurance or assurance with the insurer or assurer is called the "insured" or "assured." There is some authority that the person contracting with the insurer is the "insured" while the beneficiary of the policy is the "assured." This distinction is not recognized in modern insurance law under which the terms "insured" and "assured" are regarded as synonymous except when the particular wording of the policy requires the making of such a distinction. The "insured" in a life insurance policy means the person whose life is insured and whose death matures the obligation of the insurer to pay.

2A George J. Couch, Cyclopedia of Insurance Law § 23:1 at 769-70 (2d ed. 1984).

The Kansas Supreme Court, after citing from a part of the above-quoted section in Couch's treatise, wrote:

The policies, read in their entirety, use the term *insured* to refer to both the one whose life is insured and the owner of the policy. The term is thus ambiguous where these entities are two different people. We hold [the deceased wife] purchased the policies of insurance on the life of her [deceased] husband . . . for the specific purpose of preventing the proceeds of the policies from becoming a part of [his] estate. We therefore hold the [deceased wife's estate] is entitled to the proceeds from the policies of insurance on [the deceased husband's] life.

(Emphasis in original.) *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 36-37, 744 P.2d 840, 845 (1987).

We thus determine that as used in § 44-370, the phrase "person holding a policy" describes the owner of the policy and that § 44-370 therefore grants the owner of a life insurance policy the right to change the beneficiary unless the appointment of the beneficiary was made irrevocable. It is also clear that the owner need not be the insured, that is, the person whose death obligates the insurer to pay under the policy.

### 3. OWNERSHIP STATUS OF DECEDENT AND FORMER WIFE

Although the dissolution decree, without distinguishing between tangible and intangible items, awarded the decedent and the former wife the personal property then in the possession of each, neither claimant established which of the dissolution parties had possession of the certificates when the decree was entered. We therefore need not concern ourselves with what the situation might have been had the record done so.

In so saying, we do not overlook that summary judgment is properly granted only when the record discloses that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the movant is entitled to judgment as a matter of law. *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal., ante* p. 351, 500 N.W.2d 520 (1993); *First United Bank v. First Am. Title Ins. Co.*, 242 Neb. 640, 496 N.W.2d 474 (1993). However, neither do we overlook that a movant for summary judgment has made a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were

uncontroverted at trial. *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal., supra; Overmier v. Parks,* 242 Neb. 458, 495 N.W.2d 620 (1993). At that point, the burden of producing evidence shifts to the party opposing the motion. See, *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal., supra; Overmier v. Parks, supra.* As there is no other evidence on the matter, the question of who owned the insurance is answered solely by the language of the certificates and the master policy under which they were issued. There thus can exist no genuine issue of either law or material fact in that regard.

In studying the relevant language, we also recall that an insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. When the terms of the contract are clear, they are to be accorded their plain and ordinary meaning. When a clause can be fairly interpreted in more than one way, there is ambiguity. See, *Thorell v. Union Ins. Co.,* 242 Neb. 57, 492 N.W.2d 879 (1992); *Mahoney v. Union Pacific RR. Emp. Hosp. Assn.,* 238 Neb. 531, 471 N.W.2d 438 (1991).

We must also remember that like the interpretation of a statute, the construction of a contract is a matter of law, which we review in like manner. *Northern Bank v. Federal Dep. Ins. Corp.,* 242 Neb. 591, 496 N.W.2d 459 (1993); *Baker v. St. Paul Fire & Marine Ins. Co.,* 240 Neb. 14, 480 N.W.2d 192 (1992); *Spittler v. Nicola,* 239 Neb. 972, 479 N.W.2d 803 (1992).

The first two certificates provide for joint decreasing life insurance, which the master policy defines as insurance on the life of the insured debtor, the original amount of which decreases progressively in accordance with a stated formula. The master policy also provides:

(3) In no case shall more than one person be insured on account of any one indebtedness except where insurance is provided for Decreasing Life Insurance-Joint Debtor. If more than one name appears on the Certificate of Insurance as "Insured Debtor", the first named insured debtor be [sic] the insured Debtor.

(a) When Decreasing Life Insurance-Joint Debtor is provided, the Debtor and Joint Debtor shall be the "Insured Debtor" jointly.

Consequently, although a wrong or an incomplete form of the verb "to be" is utilized in the above-quoted paragraph (3) of the master policy, the language nevertheless makes clear that as the decedent and the former wife were joint debtors who purchased decreasing life insurance, they were joint insureds.

Moreover, because the bank is named as the irrevocable creditor beneficiary on a joint debt of the decedent and the former wife, and the premium for the coverage was a single one, the decedent and the former wife were not only the joint insureds, they were also joint owners of the insurance provided. Consequently, as to these two certificates, the terms of § 44-370 prevent a change in beneficiary except by the joint act of the two owners.

The third certificate was also issued to the decedent and the former wife as the joint insured debtors, but rather than providing joint decreasing life insurance, as do the first two certificates, the third certificate provides level life, joint debtor life insurance. The master policy defines level life insurance as insurance on the life of the insured debtor, at all times to be equal to the amount of insurance selected on the certificate. It specifies the rate at which to compute the single premium required for "Level Life Insurance Joint Debtor" as follows:

> a product of the rate per $100.00 of the initial amount of such Debtors Level Life insurance becoming effective hereunder multiplied by the number of months of the period over which his indebtedness is to be repaid said rates being:
>
> Level Life Insurance Debtor Only: $ 1.18
> Level Life Insurance Joint Debtor: $ 1.97

Obviously, providing a premium rate for level life insurance for joint debtors is inconsistent with the earlier mentioned provision of the master policy which permits joint debtors to obtain only decreasing life insurance.

Notwithstanding this inconsistency and resultant ambiguity, the master policy provides for, and the decedent and the former wife were charged, a premium for level life insurance as joint debtors. This resulted in a charge somewhat less than twice as high as the premium for level life insurance on a single debtor.

We have oft held:

> The resolution of an ambiguity in a policy of insurance turns not on what the insurer intended the language to mean, but what a reasonable person in the position of the insured would have understood it to mean at the time the contract was made. . . . In the case of ambiguity in an insurance contract, a construction favorable to the insured prevails so as to afford coverage.

*Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 869, 468 N.W.2d 105, 115 (1991). See, also, *Central Waste Sys. v. Granite State Ins. Co.*, 231 Neb. 640, 437 N.W.2d 496 (1989); *Polenz v. Farm Bureau Ins. Co.*, 227 Neb. 703, 419 N.W.2d 677 (1988).

Under those rules, the payment of a premium based upon joint insurance would foreclose Universal from denying joint coverage to the decedent and the former wife. Since the master policy and the third certificate must be construed to provide joint coverage, we hold that both the decedent and the former wife were insureds and that as joint debtors and joint purchasers of the insurance, they were the coowners of the insurance created by the third certificate.

## IV. JUDGMENT

There being no genuine issue concerning any material fact or the ultimate inferences deducible therefrom, and the former wife being entitled to judgment as a matter of law, the judgment of the district court is affirmed.

AFFIRMED.