RONALD G. MEDLEY, APPELLANT, V. JAMES A. DAVIS, M.D., APPELLEE.

529 N.W.2d 58

Filed March 24, 1995. No. S-93-682.

Timothy K. Kelso and James E. Harris, of Harris, Feldman, Stumpf Law Offices, for appellant.

William M. Lamson, Jr., and David J. Schmitt, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and GRANT, J., Retired.

WRIGHT, J.

Ronald G. Medley brought this medical malpractice action against James A. Davis, M.D. The district court overruled Medley's motion for partial summary judgment, sustained Davis' motion for summary judgment, and dismissed the action. Medley appeals.

## SCOPE OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Maloley v. Shearson Lehman Hutton, Inc.*, 246 Neb. 701, 523 N.W.2d 27 (1994); *Young v. First United Bank of Bellevue*, 246 Neb. 43, 516 N.W.2d 256 (1994).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits· in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Gravel v. Schmidt, ante* p. 404, 527 N.W.2d

199 (1995); *Heath Consultants v. Precision Instruments, ante* p. 267, 527 N.W.2d 596 (1995).

## FACTS

Medley's amended petition alleged that between October 17, 1986, and August 1990, Medley placed himself under the medical care and treatment of Davis, relying upon Davis' apparent professional advice, care, treatment, and diagnosis for the treatment of certain psychological disorders and physical symptoms. Medley alleged that Davis diagnosed him as having a psychotic or paranoid condition and prescribed certain psychotropic or neuroleptic drugs and medications in such amounts and combinations as to effectively diminish Medley's mental capacities to such an extent that he was incompetent and unable to carry on the normal functions of an adult male.

Medley claimed that Davis was negligent in the following particulars: failing to properly diagnose Medley's condition; failing to obtain a complete patient history; misdiagnosing Medley as psychotic or paranoid; failing to properly care for and treat Medley's psychiatric condition; prescribing excessive amounts of psychotropic drugs over an extended period of time, which Davis knew or should have known would cause severe, debilitating, and permanent side effects; and failing to monitor Medley's drug consumption. Davis denied the allegations and asserted that he exercised that degree of care and skill expected of a physician practicing his profession in Omaha, Nebraska, or similar communities.

Both parties eventually requested summary judgment. Among Medley's exhibits was the affidavit of John Y. Donaldson, M.D. Medley sought treatment from Donaldson in February 1991 after leaving Davis' care. Medley also offered the purported affidavit of William Logan, M.D., which was unsigned, to which Davis objected. The district court ruled that Medley had failed to show good cause for not having secured Logan's signed affidavit prior to the hearing on the summary judgment motions. Davis offered his own affidavit in support of his motion for summary judgment.

The district court concluded that Medley had failed to establish that Davis' care was below the standard required in

psychiatry in the community. The court found that Davis' affidavit established that he had met the required standard of care. The court overruled Medley's motion for partial summary judgment, sustained Davis' motion for summary judgment, and dismissed the action.

## ASSIGNMENTS OF ERROR

Medley claims the district court erred in sustaining Davis' motion for summary judgment, in overruling Medley's motion for partial summary judgment, in sustaining Davis' objection to the purported affidavit of Logan, and in overruling Medley's motion for new trial.

## ANALYSIS

We must determine whether there is a genuine issue of material fact as to whether Davis met the required standard of care in his treatment of Medley during the periods alleged in Medley's amended petition. See *Healy v. Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Maloley v. Shearson Lehman Hutton, Inc.*, 246 Neb. 701, 523 N.W.2d 27 (1994). Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Gravel v. Schmidt, ante* p. 404, 527 N.W.2d 199 (1995).

Medley's amended petition was filed in March 1992, and his motion for partial summary judgment was filed on February 18, 1993. Davis' motion for summary judgment was then filed on March 15. The hearing regarding the motions was held on May 25. Medley did not attempt to offer the purported affidavit of Logan until the day of the hearing. Under Neb. Rev. Stat. § 25-1332 (Reissue 1989), the adverse party must serve opposing affidavits prior to the date of the hearing. See *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992). In addition, the unsigned document did not meet the requirements

of Neb. Rev. Stat. § 25–1241 (Reissue 1989), which provides: "An affidavit is a written declaration under oath, made without notice to the adverse party." Therefore, the unsigned document was not admissible. Since Medley failed to comply with either § 25–1332 or § 25–1241 and did not show good cause for his failure to secure Logan's signed affidavit prior to the hearing, the district court properly excluded the affidavit.

Neb. Rev. Stat. § 25–1335 (Reissue 1989) provides an additional safeguard against a premature grant of summary judgment. *Wachtel v. Beer*, 229 Neb. 392, 427 N.W.2d 56 (1988). The party opposing the summary judgment may by affidavit show a reasonable excuse or good cause why the party is presently unable to offer evidence essential to justify opposition to the motion for summary judgment. *Id.* Medley failed to request a continuance of the hearing in order to obtain Logan's signature. Under such circumstances, we cannot say that the district court abused its discretion.

Next, we review the evidence offered at the hearing in a light most favorable to Medley and give Medley the benefit of all reasonable inferences deducible from the evidence. See *Maloley v. Shearson Lehman Hutton, Inc., supra.* Because the affidavit from Logan was properly excluded, we consider only the evidence which was properly admitted. This includes affidavits from Donaldson and from Davis.

In his affidavit, Donaldson states that he has professional knowledge of the facts and circumstances surrounding Medley's condition because Medley was his patient. Attached to the affidavit are copies of Donaldson's office records and a February 7, 1992, medical report. The affidavit notes that the statements and/or opinions contained in the attachments are based upon Donaldson's training, education, and experience as a physician engaged in the medical specialty of psychiatry and are based upon a reasonable medical certainty.

Donaldson stated that when he began treating Medley in February 1991, Medley exhibited symptoms of depression and serious side effects to Stelazine, including restlessness, tremors, sedation, and localized stiffness in various parts of the body. Because Davis had prescribed as much as 50 milligrams of Stelazine per day for Medley, Donaldson believed that Davis

assumed Medley was suffering from paranoid schizophrenia. The usual dosage of Stelazine for treating anxiety is 4 to 6 milligrams per day. Stelazine is normally given in doses of 30 to 50 milligrams per day only for treatment of severe schizophrenia.

Donaldson, however, believed that Medley was suffering from a major depressive disorder, possibly with psychosis, rather than schizophrenia. During his twenties and thirties, Medley had obtained a master's degree and had taught at the high school and college levels. Donaldson said it was atypical for a person with schizophrenia to function at such a high level at that age. Donaldson stated that he gradually increased antidepressant medication and gradually withdrew Stelazine. By May 1991, Donaldson was certain that Medley was depressed and was not suffering from paranoid schizophrenia. Donaldson stated in a February 1992 medical report to Medley's attorney that Medley's disability resulted from a combination of Stelazine side effects and untreated depression.

Medley told Donaldson that Medley had been too disabled to work regularly since 1986, when Davis began prescribing medication for Medley. Yet the record shows that in 1986, Davis wrote a letter of recommendation for Medley which indicated essentially no psychiatric illness. In 1989, Davis wrote a letter indicating that Medley had some anxiety and depression, with a diagnosis of adjustment disorder of adult life.

The records offered by Davis show that he never billed Medley for his treatment. Donaldson stated that this might indicate that Davis prescribed medication for Medley while treating Medley's wife, who was a patient of Davis'. Donaldson indicated that Davis may not have had Medley complete the process of becoming an identified patient. Medley told Donaldson that Medley accompanied his wife to her appointments with Davis and that Medley's wife frequently reported his medical complaints to Davis. According to Donaldson, this was an "unusual approach" in providing medication for any patient, and if that was indeed the case, it would not meet the usual medical standard of care.

In Donaldson's opinion, before a psychiatrist prescribes Stelazine, the usual standard of care requires that a thorough

medical history be taken and recorded, that a mental status exam be conducted, and that the psychiatrist reach a diagnosis of intractable generalized anxiety disorder or schizophrenia. Once on the medication, the patient should be seen for regular followups to monitor for any neurologic side effects and other potential problems such as impaired immunity or hepatic dysfunction. Davis offered no prescription records or documentation of medications for Medley.

In his affidavit, Davis stated that he was a physician licensed to practice medicine in the State of Nebraska with a specialization in psychiatry. Davis stated that he was familiar with Medley's care and treatment. Davis indicated that he initially saw and evaluated Medley in November 1986 as a collateral patient with his wife. Based on his examination and observations, Davis began treating Medley with Stelazine in 1987 due to Medley's physical and mental condition. Davis noted that Medley developed extrapyramidal syndrome, which Davis treated with Cogentin. Attached to Davis' affidavit are progress notes for Medley's wife, beginning on February 3, 1987. The notes, which continue through January 2, 1990, relate strictly to Medley's wife. Medley is mentioned only in regard to his relationship with his wife.

Davis stated in his affidavit that he was familiar with the standard of care for psychiatrists in Omaha and similar communities as it existed from 1986 through 1990 and to the time of the affidavit. Based upon a review of his records; his experience, education, and training; his knowledge of the circumstances of Medley's care and treatment; and the allegations of negligence contained in Medley's amended petition, Davis was of the opinion to a reasonable degree of medical certainty that he was not negligent in the care and treatment rendered to Medley, that he met the standard of care for psychiatrists in his treatment of Medley, and that any alleged injury that occurred between 1986 and 1990 was not the result of negligence.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Healy v.*

*Langdon*, 245 Neb. 1, 511 N.W.2d 498 (1994). A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. At that point, the burden of producing evidence shifts to the party opposing the motion. *Universal Assurors Life Ins. Co. v. Hohnstein*, 243 Neb. 359, 500 N.W.2d 811 (1993).

Although Davis' affidavit in support of his motion for summary judgment contained conclusions as to negligence, which we disregard, Medley conceded that Davis' affidavit made a prima facie showing that if Davis' evidence were uncontroverted at trial, he would be entitled to summary judgment. Davis' affidavit stated that he met the standard of care in his treatment of Medley. Therefore, Davis' affidavit shifted the burden to Medley to produce evidence of a factual issue regarding whether or not Davis met this standard of care.

Whether a specific manner of treatment or exercise of skill by a physician, surgeon, or other professional demonstrates a lack of skill or knowledge or failure to exercise reasonable care is a matter that, usually, must be proved by expert testimony. *Reifschneider v. Nebraska Methodist Hosp.*, 222 Neb. 782, 387 N.W.2d 486 (1986). We therefore consider Donaldson's affidavit, since Logan's purported affidavit was properly excluded. The district court found that Donaldson's affidavit was insufficient to refute Davis' prima facie showing that his treatment met the standard of care required. We disagree. Reviewing the medical report prepared by Donaldson and giving all reasonable inferences to Medley, as we are required to do, the report states that the care provided by Davis did not meet the usual medical standard.

Donaldson, a graduate of the University of Nebraska College of Medicine (UNMC), was a clinical associate professor at UNMC. He was a member of the American Board of Psychiatry and Neurology. He had served as a director of psychiatric programs at the Nebraska Psychiatric Institute and the Lincoln Regional Center and had maintained a private practice in Omaha. Therefore, we can reasonably infer that Donaldson was familiar with the standard of care required in the practice of psychiatry in Omaha.

Donaldson reported that the usual standard of care before prescribing Stelazine requires that the psychiatrist obtain a thorough medical history, conduct a mental status exam, and make a diagnosis of intractable generalized anxiety disorder or schizophrenia. Donaldson stated:

> I really don't know what unfolded in Dr. Davis's office but if there were no billings for Mr. Medley he may well have prescribed for Mr. Medley while caring for Mrs. Medley. In that case he may not have had Mr. Medley go through the process of becoming an identified patient with full history, mental status exam, etc. This would be an unusual approach in providing medication for any patient. If that were indeed the case, it would not meet the usual medical standard. You may want to request Mrs. Medley's records to see if mention is made in those of care for Mr. Medley.

A reasonable inference from the facts presented is that this "unusual approach" was indeed the case. Davis acknowledged that he had no documents, office notes, or reports which pertained to Medley other than the progress notes concerning Medley's wife. Davis had no prescription records or other documentation of medications prescribed to Medley. Thus, it is reasonable to infer that Davis' failure to obtain a full history and conduct a mental status exam did not meet the usual standard of care, and there exists a material question of fact as to whether Davis' treatment failed to meet the standard of care required.

Summary judgment should not be used to deprive a litigant of a formal trial if there is a genuine issue of fact. *Metro. Tech. Community College v. South Omaha Industrial Park*, 207 Neb. 472, 299 N.W.2d 535 (1980). We therefore reverse the judgment of the district court and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.