THE HORACE MANN COMPANIES, INTERVENOR–APPELLEE AND CROSS–APPELLEE, V. JANET PINAIRE, APPELLEE AND CROSS–APPELLANT, JAMES WILSON, APPELLEE, AND DIANE ZIPAY, APPELLANT.

538 N.W.2d 168

Filed October 6, 1995. No. S–94–142.

Hugh I. Abrahamson for appellant.

Patrick L. Tripp, P.C., of Tripp, Schweer & Ferraro, for appellee Pinaire.

Eugene L. Hillman, of McCormack, Cooney, Hillman & Elder, for intervenor–appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

## I. INTRODUCTION

Horace Mann Companies (Horace Mann) filed a petition in intervention in the Douglas County District Court requesting a determination of its liability with regard to an automobile insurance policy with an underinsured motorist endorsement. The district court granted summary judgment in favor of Horace Mann and denied Diane Zipay and Janet Pinaire benefits under the policy. Zipay appeals, and Pinaire cross-appeals. Under the authority granted to us by Neb. Rev. Stat. § 24–1106(3) (Cum. Supp. 1994) to regulate the caseloads of the appellate courts of this state, we removed the appeal to this court.

## II. SCOPE OF REVIEW

In an appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Wagner v. Pope*, 247 Neb. 951, 531 N.W.2d 234 (1995).

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Medley v. Davis*, 247 Neb. 611, 529 N.W.2d 58 (1995).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Krohn v. Gardner, ante* p. 210, 533 N.W.2d 95 (1995).

## III. FACTS

On February 10, 1988, Pinaire, Zipay, James Wilson, and Vivian Roper, employees of Omaha Public Schools (OPS), were injured when the OPS automobile in which they were riding was struck from the rear by an automobile driven by Floyd

Sherburne. Sherburne was insured by State Farm Automobile Insurance Company (State Farm), which had a liability policy limit of $50,000 per accident. The OPS vehicle was insured by Aetna Casualty & Surety Company (Aetna), which policy included $100,000 of underinsured motorist coverage. Zipay, the driver of the OPS automobile, was insured by Horace Mann Company. Zipay's policy included "single limit underinsured benefits" in the sum of $300,000.

In December 1989, State Farm paid Pinaire $25,000, and Pinaire and Aetna signed a covenant not to sue Sherburne and State Farm. The agreement was made without the knowledge of Horace Mann. State Farm paid Zipay $9,268 on behalf of Sherburne, but Zipay did not sign a covenant or release. This payment was made without the knowledge or consent of Horace Mann. State Farm paid the balance of its $50,000 liability coverage to other parties in varying amounts.

In September 1991, Aetna intervened to determine the distribution of its underinsured benefits, which Aetna conceded were due and owing to Pinaire, Zipay, and Wilson. On December 6, 1991, Horace Mann intervened to determine what amounts of underinsured benefits, if any, Horace Mann was obligated to pay to the parties under its policy with Zipay. Pinaire's answer prayed for an order declaring that Horace Mann had an obligation to pay Pinaire the $300,000 policy limit. Roper disclaimed any further interest in the payment by Aetna. On March 9, 1992, Pinaire, Zipay, and Wilson, with the consent of Horace Mann, settled with Aetna for the maximum amount of underinsured benefits due under the OPS policy. After reducing its coverage of $100,000 by State Farm's payment of $50,000, Aetna paid Pinaire $34,000, Zipay $8,500, Wilson $2,500, and Roper $5,000.

Horace Mann moved for summary judgment, seeking a declaration of its underinsured liability under its policy with Zipay. The district court entered summary judgment denying Zipay and Pinaire benefits under Horace Mann's policy of underinsured coverage.

The order of summary judgment stated in part:

[Horace] Mann claims that by reason of the defendant Pinaire and Zipay settling with the tortfeasor Sherburne

and his carrier State Farm and by accepting payments under State Farm[']s policy and Pinaire giving a covenant not to sue in return for $25,000 and Zipay accepting $8,500 without giving a release or covenant not to sue that Mann's contingent right of subrogation against Sherburne is destroyed and the violation of the policy provisions bars the claims of the defendants under Mann's policy. (Note: State Farm paid out its full liability coverage under its policy). Defendants acknowledge the settlement with the tortfeasor and State Farm, his liability carrier, but claim that Mann's potential subrogation rights have not been adversely affected since Sherburne is for all practical purposes judgment proof and refer to Exhibit No. 3.

However, a careful review of Exhibit No. 3 indicates, without discussion as to whether Sherburne's wife's income and expenses should be considered, that there is $265.84 excess income over expenses. One of the expenses listed is $270.00 per month for charitable contributions. This sum could well be used to pay on a judgment along with the $265.84 excess income or a total of $535.84 is available. There is no doubt in the Court's mind but that the settlements with Zipay and Pinaire have adversely affected Mann's potential subrogation rights and that Mann's policy has been violated so far as the consent to settlement provision is concerned. Hastings v. Fireman's Fund American Insurance Company, 193 Neb. 417, 227 N.W.2d 418 (1975).

The court found it was unnecessary to proceed to answer any additional issues inasmuch as it found that there had been a policy violation that substantially and adversely affected the rights of Horace Mann to pursue subrogation.

## IV. ASSIGNMENTS OF ERROR

Pinaire claims the district court erred in sustaining the motions for summary judgment and in determining that her settlement with Sherburne's liability insurance carrier (State Farm) substantially and adversely affected Horace Mann's subrogation interests, thereby allowing Horace Mann to deny underinsured motorist coverage to Pinaire.

Zipay makes nine assignments of error which we summarize as assertions that the court erred (1) in entering summary judgment because there are significant and genuine issues of fact as to whether the settlement between Zipay, Sherburne, and State Farm adversely affected the rights of Horace Mann; (2) in finding no genuine issue of material fact regarding the financial condition of Sherburne and his ability to satisfy a judgment; and (3) in denying Zipay's motion for reconsideration and leave to file an amended answer and cross-petition.

## V. ANALYSIS

The issue before us is whether the agreement between State Farm and Pinaire and the payment by State Farm to Zipay allow Horace Mann to deny underinsured motorist coverage to Pinaire and Zipay. Neb. Rev. Stat. § 60-582 (Reissue 1993), now codified at Neb. Rev. Stat. § 44-6413 (Cum. Supp. 1994), provides in pertinent part:

(1) The underinsured motorist coverages provided in the . . . Act shall not apply to:

(a) Bodily injury . . . of the insured with respect to which the insured . . . makes, without the written consent of the insurer, any settlement with or obtains any judgment against any person who may be legally liable for any injuries if such settlement adversely affects the rights of the insurer[.]

Similar provisions are contained in the language of the policy issued by Horace Mann. Horace Mann's underinsured motorist coverage endorsement provided: "This insurance does not apply: . . . to *bodily injury* to an *insured* with respect to which such *insured* . . . shall, without written consent of the company, make any settlement with any *person* or organization who may be legally liable therefor . . . ."

Under the terms of the Underinsured Motorist Insurance Coverage Act, an insurer can avoid its policy obligation only if the insured's settlement with the tort-feasor "adversely affects" the insurer's rights. Our analysis of § 60-582(1)(a) includes a determination of what is a "settlement" and whether the settlement adversely affected the rights of Horace Mann.

The term "settlement" is not defined within the act. As used

in § 60–582, the term "settlement" appears within the same sentence as "obtains any judgment against any person." Black's Law Dictionary 1372 (6th ed. 1990) describes a settlement, inter alia, as "[i]n legal parlance, implies meeting of minds of parties to transaction or controversy; an adjustment of differences or accounts; a coming to an agreement. . . . To fix or resolve conclusively; to make or arrange for final disposition. . . . Agreement to terminate or forestall all or part of a lawsuit." ·

Courts are expected to give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *George Rose & Sons v. Nebraska Dept. of Revenue, ante* p. 92, 532 N.W.2d 18 (1995). We conclude that the term "settlement" as used in § 60–582 means that the parties to a controversy must come to an agreement that is a final resolution of the controversy.

## 1. ZIPAY

We first examine the agreement with Zipay, concentrating on the question of whether a settlement was entered into between Zipay and State Farm. Zipay received $9,268 from State Farm pursuant to Sherburne's policy, but Zipay did not sign a release or covenant not to sue. Zipay's brief states that this amount was forwarded to Aetna to reimburse it for its subrogation claims arising from workers' compensation benefits paid to Zipay. Aetna subsequently paid $8,500 to Zipay in exchange for a covenant not to sue, which agreement was consented to by Horace Mann.

There is no evidence in the record to indicate that the payment of $9,268 was considered as a final resolution of the matter between Zipay and Sherburne or State Farm. Restatement (Second) of Torts § 900 at 445 (1979) states: "(1) A cause of action for a tort may be discharged by . . . (b) satisfaction, or a release or contract not to sue . . . ." The comment on clause (b) provides: "A satisfaction is the payment made by the tortfeasor or by one acting in behalf of him of an amount that is accepted by the injured party as payment in full for his injury." *Id.*, § 900, comment *b.* at 446. There is no evidence that Zipay accepted the money from State Farm as

payment in full for her injuries or agreed that such payment would be a final resolution of the matter between Zipay and Sherburne. In *McCurry v. School Dist. of Valley*, 242 Neb. 504, 515, 496 N.W.2d 433, 440 (1993), we stated:

> Currently, the standard for determining the effect of an agreement purporting to operate as a "release" under Nebraska law is controlled by two factors: (1) whether the injured party has received full satisfaction and (2) whether the parties intended that the release be in full satisfaction of the injured party's claim.

The record does not support the position that the payment to Zipay operated as a release.

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Krohn v. Gardner, ante* p. 210, 533 N.W.2d 95 (1995). The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Medley v. Davis*, 247 Neb. 611, 529 N.W.2d 58 (1995).

Therefore, we conclude as to Zipay that neither § 60-582(1)(a) nor the exclusion in Horace Mann's policy applies because there was no settlement between Zipay and Sherburne or State Farm. The district court erred in granting summary judgment as to the issues involving Zipay.

### 2. PINAIRE

#### (a) The Settlement

In consideration of $25,000, Pinaire agreed not to sue Sherburne or State Farm. In *McCurry*, we defined a covenant not to sue:

> " ' " '[A] covenant not to sue is not a present abandonment or relinquishment of a right or claim but merely an agreement not to enforce an existing cause of action, and, although it may operate as a release between the parties to the agreements, it will not release a claim

against joint obligors or joint tortfeasors.' . . ." ' "
242 Neb. at 516, 496 N.W.2d at 441. In the case of a single tort–feasor, the covenant not to sue and the release have the same practical effect. Pinaire is barred from suing Sherburne. The agreement between Pinaire, Sherburne, and State Farm is a settlement for purposes of § 60–582 and Horace Mann's policy.

### (b) Adverse Effect Upon Horace Mann

We must next determine whether the settlement by Pinaire adversely affected Horace Mann. If Sherburne was "judgment proof," then Horace Mann was not adversely affected by the settlement.

Pinaire cites *Kapadia v. Preferred Risk Mut. Ins. Co.*, 418 N.W.2d 848 (Iowa 1988), in which the Iowa Supreme Court held that insurers could not rely on a consent to settlement clause to deny coverage unless actual financial prejudice to the insurer could be shown to have resulted from the insured's settlement with the tort–feasor.

In denying Horace Mann's coverage, the district court relied upon *Hastings v. Fireman's Fund American Ins. Co.*, 193 Neb. 417, 227 N.W.2d 418 (1975). See, also, *Worobec v. State Farm Mut. Auto. Ins. Co.*, 200 Neb. 210, 263 N.W.2d 95 (1978). In *Hastings* and *Worobec*, the insurers denied coverage to insureds based on violations of consent to settlement clauses in uninsured motorist policies. In *Hastings*, for example, the tort–feasor (Mills) was uninsured, and at the time of the accident, the plaintiff (Hastings) was insured under a policy issued by Fireman's Fund which provided coverage against uninsured motorists. The policy provided that Fireman's Fund was entitled to the proceeds of the judgment against Mills and that nothing should be done by the insured to prejudice the rights of recovery by Fireman's Fund. Hastings argued that breach of the policy should not be a defense because there was no showing of prejudice to Fireman's Fund. We did not directly address whether prejudice to the insurer was required, since we found there was no evidence which would sustain a finding that a judgment against Mills was worthless or that Fireman's Fund was not prejudiced by the covenant not to levy executed by

Hastings in favor of Mills. *Kapadia*, *Hastings*, and *Worobec* do not have any direct application because the issue is controlled by § 60–582, which requires that the settlement adversely affect the rights of the insurer before coverage can be denied.

In granting the summary judgment in the case at bar, the court reviewed the pleadings, the parties' stipulations, and the exhibits. Exhibit 3 was an affidavit which showed that Sherburne had real property of $26,375 and no debts.

Pinaire contends that whether Sherburne was judgment proof is a material question of fact which requires the weighing of evidence such as income and assets of Sherburne, including the extent to which such assets are exempt from the claims of creditors. Pinaire argues that Sherburne was a 78–year–old retired Iowa resident with no earned income whose only sources of income, Social Security and pension payments, were exempt from creditors' claims under Iowa law. Pinaire asserts that Sherburne's home was exempt from creditors' claims and that one–half interest in the home was owned by Sherburne's spouse. Pinaire claims that any subrogation rights Horace Mann possessed against Sherburne were of no value.

In *Iowa Mut. Ins. Co. v. Meckna*, 180 Neb. 516, 144 N.W.2d 73 (1966), we held that the insurer has the burden of proving a breach of a policy clause and that in the absence of showing of prejudice to the insurer, coverage cannot be denied. By moving for summary judgment, Horace Mann has the burden to show that no genuine issue of material fact exists. See *Medley v. Davis*, 247 Neb. 611, 529 N.W.2d 58 (1995). Horace Mann argues that the evidence offered showed that Sherburne was not judgment proof because of his assets described in exhibit 3. We agree.

After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Krohn v. Gardner, ante* p. 210, 533 N.W.2d 95 (1995). Pinaire has not controverted the fact that Sherburne had real property valued at $26,375.

Pinaire's citation to sections of the Iowa Code regarding exemptions and creditors' rights does not create a material issue

of fact as to whether Horace Mann was adversely affected by the settlement. To require a trial court to take judicial notice of the law of another state, the existence of that law must be pleaded. *Calvert v. Roberts Dairy Co.*, 242 Neb. 664, 496 N.W.2d 491 (1993). The record on summary judgment shows that Pinaire did not plead Iowa law. Since we have not been presented with Iowa law, it is presumed to be the same as that of this state. See, *Vanice v. Oehm*, 247 Neb. 298, 526 N.W.2d 648 (1995); *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985).

Pursuant to Nebraska law, the homestead exemption does not exceed $10,000. Neb. Rev. Stat. § 40–101 (Reissue 1993). We find no case in Nebraska where we have construed whether the spouse may also assert a homestead exemption of $10,000. However, in *Matter of Foulk*, 134 B.R. 929 (Bankr. D. Neb. 1991), the husband and wife both asserted the Nebraska homestead exemption. The bankruptcy court found this exemption was defective on its face because the aggregate amount exceeded the statutory limit of $10,000. The bankruptcy court pointed out that under 11 U.S.C. § 522(b)(1) the debtors were entitled to assert the Nebraska exemptions. The bankruptcy court stated that the Nebraska homestead exemption was available only to a head of household and, therefore, limited to $10,000. If the head of the household did not have a homestead exemption, a $2,500 in lieu of homestead exemption can be claimed under Neb. Rev. Stat. § 25–1552 (Reissue 1989). The bankruptcy court stated that, at most, each exemption may be asserted once for an aggregate exemption of $12,500. See *Matter of Nachtigal*, 82 B.R. 533 (Bankr. D. Neb. 1988).

Neb. Rev. Stat. § 25–15,105 (Reissue 1989) states that federal exemptions provided in 11 U.S.C. § 522(d) are rejected by the State of Nebraska. Nebraska retains the personal exemptions provided under Nebraska statutes and the Nebraska Constitution, and such exemptions apply to any bankruptcy petition filed in Nebraska after April 17, 1980.

Therefore, it is uncontroverted that Sherburne's exemption, including his spouse's exemption, was $12,500. This would leave an excess of $13,500 of real property not exempt from execution. The covenant not to sue adversely affected Horace

Mann's rights to subrogation against Sherburne, who was not judgment proof to this extent. The Court of Appeals was correct in entering summary judgment in favor of Horace Mann against Pinaire.

## VI. CONCLUSION

We affirm the judgment against Pinaire. We reverse the judgment against Zipay and remand that cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.