EVELYN A. O'CONNOR, APPELLANT, AND DAVID A. KAUFMAN AND VIRGINIA L. KAUFMAN, HUSBAND AND WIFE, APPELLEES.

550 N.W.2d 902

Filed June 28, 1996. No. S-94-898.

420

James Duffy O'Connor and, on brief, Donn C. Raymond for appellant.

John P. Weis, of Atkins, Ferguson & Carney, P.C., for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

The appellant, Evelyn A. O'Connor, brought this action for declaratory judgment, alleging in her amended petition that she possesses an implied easement for the use of a well, pump, and pipeline on land owned by David A. Kaufman and Virginia L. Kaufman. O'Connor also requested that the Kaufmans be required to reinstall the well, pump, and pipeline

and sought an injunction to prevent the Kaufmans from further interfering with her use of the well, pump, and pipeline. The Kaufmans answered the amended petition and filed a motion for summary judgment. The district court for Scotts Bluff County sustained the Kaufmans' motion and dismissed O'Connor's amended petition. O'Connor appeals.

Viewing the evidence in a light most favorable to O'Connor, we determine there is a genuine issue of material fact as to whether an implied easement for use of the well, pump, and pipeline was created. We therefore reverse, and remand for further proceedings.

## ASSIGNMENTS OF ERROR

O'Connor alleges the district court erred in (1) sustaining the Kaufmans' motion for summary judgment, (2) failing to find there was a genuine issue of material fact as to the necessity of an implied easement for furnishing domestic water to O'Connor's land, and (3) finding that it was essential for O'Connor to prove the Kaufmans had actual knowledge of the implied easement when they acquired title to their land.

## BACKGROUND

Below is a sketch of the parcels of land involved. The sketch is for illustrative purposes only and does not purport to be drawn to scale. See *Winkle v. Mitera*, 195 Neb. 821, 241 N.W.2d 329 (1976). The property at issue is approximately 460 acres of farmland located southeast of Lyman, Nebraska. O'Connor is the owner of the parcels marked A, B, and C. The Kaufmans are the owners of parcel D. Parcels A and D adjoin each other, divided only by a country road.

Until January 2, 1965, William Ledingham, Jr., owned and farmed all the land (parcels A, B, C, and D). Ledingham maintained a home on parcel A, which is now owned by O'Connor. The well, pump, and pipeline in question were built by Ledingham approximately 40 years ago on parcel D in order to furnish domestic water to his home on parcel A. The pipeline running from parcel D to parcel A is underground.

On January 2, 1965, Ledingham conveyed all the land to Ledingham, Inc. Ledingham passed away on January 29, 1975, and Ledingham, Inc., conveyed the land to his two children by corporate dissolution deeds. Parcels A and B were conveyed to Ledingham's son, Jerry Ledingham, and parcels C and D were conveyed to his daughter, Sandra Carnesecca. Carnesecca subsequently conveyed parcel C to her brother, Jerry Ledingham, in an effort to equalize their interests in their father's estate.

Jerry Ledingham passed away on January 31, 1985, and parcels A, B, and C were conveyed by personal representative deed to O'Connor, his wife. Title of parcel D went from Carnesecca to Renteria Brothers Land and Livestock, Inc., on February 7, 1978, then passed to Arthur and Dora Renteria on January 16, 1979, then to Arthur Renteria on January 26, 1979, then to Renteria Farms, Inc., on August 20, 1981, and finally, to the Kaufmans by sheriff's deed on November 8, 1989. No express easement for use of the well, pump, and pipeline was ever reserved throughout the chain of title to parcel D. Prior to purchasing the land, the Kaufmans searched the title record and visually inspected the land without discovering the alleged easement.

From 1978 to 1990, the house on parcel A shared the water from the well with a small house, occupied by Victor Roldan, and other outbuildings located on parcel D. In October 1985, O'Connor rented the house located on parcel A to Bill Derr. In the lease, Derr agreed to pay a fee for pumping water onto the premises from the well on parcel D. When the Kaufmans acquired the property in November 1989, Derr agreed to pay them $25 per month for use of water from the well. This

agreement continued until Derr moved out of the house in July 1991.

In September 1991, while no one was living in the house on parcel A, the Kaufmans removed the well, pump, and pipeline on parcel D and began farming the land where these items were formerly located. After the well was removed, O'Connor hired Don Rider to drill a well on parcel A in order to supply water to the house on that land. Since the well was drilled, Stanley Welsch and his family of five have lived in the house.

O'Connor's original petition alleged only a prescriptive right to the use of water from the well on parcel D. The court granted O'Connor leave to amend her petition due to an error in the legal description of her property. In her amended petition, O'Connor added a claim based upon the existence of an implied easement. In her brief, O'Connor states that for purposes of this appeal, she is not relying upon an easement by prescription, but upon an implied easement. The amended petition states in pertinent part:

> That the lands owned by plaintiff and defendants adjoin each other and that prior to plaintiff or defendants acquiring title to their respective land all of said land was owned by William Ledingham who farmed all of the land owned, maintained a home on the land owned by the plaintiff; and, installed an irrigation well on the property owned by the defendants together with a pipeline running therefrom for the purpose of providing domestic water to his home and adjoining facilities on the land owned by the plaintiff. That the reason for said installation was that the land owned by the plaintiff was incapable of supporting a water well sufficient to provide water for domestic purposes. Said well, pump and pipeline was installed more than 40 years ago and has remained in the same location for continuous furnishing of domestic water to plaintiff's land.

The Kaufmans did not challenge the sufficiency of O'Connor's amended petition to state a cause of action. The Kaufmans answered by claiming that the elements required to support the creation of an implied easement were not satisfied. O'Connor submitted her own affidavit, and the Kaufmans sub-

mitted the affidavits of Roldan, Welsch, Rider, Howard Spath, David Kaufman, Carnesecca, and Derr.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *C.S.B. Co. v. Isham*, 249 Neb. 66, 541 N.W.2d 392 (1996); *Talle v. Nebraska Dept. of Soc. Servs.*, 249 Neb. 20, 541 N.W.2d 30 (1995).

A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. At that point, the burden of producing evidence shifts to the party opposing the motion. *Keefe v. Glasford's Enter.*, 248 Neb. 64, 532 N.W.2d 626 (1995); *Medley v. Davis*, 247 Neb. 611, 529 N.W.2d 58 (1995).

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Blackbird v. SDB Investments*, 249 Neb. 13, 541 N.W.2d 25 (1995); *Hearon v. May*, 248 Neb. 887, 540 N.W.2d 124 (1995).

## ANALYSIS

In its order, the district court states, "Upon the evidence adduced at the hearing, a review of the file, arguments of counsel and briefs submitted, the Court finds that there is no genuine issue as to any material fact and that the [Kaufmans] are entitled to judgment as a matter of law." This court recently addressed the elements required to create an implied easement from former use in *Hillary Corp. v. United States Cold Storage, ante* p. 397, 550 N.W.2d 889 (1996). In that case, we held:

"An easement by implication from former use arises only where [1] the use giving rise to the easement was in existence at the time of the conveyance subdividing the

property; [2] the use has been so long continued and so obvious as to show that it was meant to be permanent; and [3] the easement is necessary for the proper and reasonable enjoyment of the dominant tract."

*Id.* at 405, 550 N.W.2d at 894, quoting *Hengen v. Hengen*, 211 Neb. 276, 318 N.W.2d 269 (1982).

In order to determine whether an implied easement from former use was created, we must look to "the time of the conveyance subdividing the property" that first brought into question whether an implied easement was created. See *Hillary Corp. v. United States Cold Storage, supra.* The conveyances from Ledingham, Inc., to William Ledingham's son and daughter on January 29, 1975, marked the first time that parcels A (the house) and D (the well, pump, and pipeline) were not under common ownership. As a result, we conclude that the time we must look to, in order to determine whether the elements required to create an implied easement were met, is January 29, 1975.

At the hearing on the motion for summary judgment, O'Connor submitted her own affidavit, and the Kaufmans submitted the affidavits of Roldan, Welsch, Rider, Spath, David Kaufman, Carnesecca, and Derr. These affidavits discussed events that transpired in the late 1980's and early 1990's, focusing predominantly upon the adequacy of the well dug in 1991 on parcel A to supply water to the house on that land. None of the affidavits submitted by either O'Connor or the Kaufmans referred to the alleged easement as of January 29, 1975, when parcels A and D were first divided.

Because the affidavits did not relate back to the appropriate timeframe, they are not relevant evidence for determining whether the elements required to create the alleged easement were met. See Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995). As a result, we look only to the amended petition and answer to determine whether a genuine issue of material fact remains for trial.

In her amended petition, O'Connor essentially claims that the elements required to create an implied easement existed at the time of the conveyances subdividing the property. The Kaufmans answered the amended petition by claiming that the

elements required to support the creation of an implied easement were not satisfied. Abandonment was not included as a theory in the Kaufmans' answer.

Viewing the evidence in a light most favorable to O'Connor, we determine that the Kaufmans failed to produce enough evidence to demonstrate that they are entitled to a judgment as a matter of law if the evidence were uncontroverted at trial. See, *Blackbird v. SDB Investments, supra*; *Hearon v. May, supra*; *Keefe v. Glasford's Enter., supra*; *Medley v. Davis, supra*. In the absence of a prima facie showing by the movant that the movant is entitled to summary judgment, the opposing party is not required to reveal evidence which she expects to produce at trial to prove the allegations contained in her petition. *Roubideaux v. Davenport*, 247 Neb. 746, 530 N.W.2d 232 (1995). As a result, we conclude that the trial court erred in granting the Kaufmans' motion for summary judgment, because genuine issues of material fact remain for trial as to obvious, continuous, and reasonably necessary use at the time of the conveyances subdividing the property (January 29, 1975).

## CONCLUSION

Viewing the evidence in a light most favorable to O'Connor, we conclude there is a genuine issue of material fact as to whether an implied easement for use of the well, pump, and pipeline was created at the time of the conveyances subdividing the property. We therefore reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.