JENNY BROWN, APPELLANT, V. AMERICAN TELEPHONE & TELEGRAPH COMPANY ET AL., APPELLEES.

560 N.W.2d 482

Filed March 21, 1997.   No. S-95-100.

John P. Fahey, of Dowd, Dowd & Fahey, for appellant.

Timothy W. Marron, of Timmermier, Gross & Burns, for appellee American Telephone & Telegraph.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and BUCKLEY, D.J.

WRIGHT, J.

Jenny Brown brought this negligence action seeking damages for injuries suffered in a slip-and-fall accident. American Telephone & Telegraph Company, Inc. (AT&T), was the owner of the premises where Brown worked as an employee of ARA Services, Inc. (ARA). The district court sustained AT&T's motion for summary judgment, and Brown appeals.

## SCOPE OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Moulton v. Board of Zoning Appeals*, 251 Neb. 95, 555 N.W.2d 39 (1996); *Polinski v. Omaha Pub. Power Dist.*, 251 Neb. 14, 554 N.W.2d 636 (1996).

## FACTS

On September 2, 1988, Brown was employed by ARA as a baker in the cafeteria located on the premises of AT&T. Brown allegedly slipped and fell on some standing water at or near her work station, which accident resulted in permanent injuries.

ARA had contracted with AT&T to provide cafeteria services for AT&T's employees at its Omaha location. The relevant provisions of the contract provided:

> EQUIPMENT PROVIDED BY [AT&T] - The cafeteria equipment listed in Attachment E, EQUIPMENT LIST AND FLOOR PLAN DRAWING (the "Equipment"), shall be furnished to [ARA] by [AT&T] at no charge. [ARA] agrees to indemnify [AT&T] for any claim made by [ARA's] employees, or by any other persons, for personal injury or property damage arising out of [ARA's] use of the equipment, which [ARA] agrees to accept at all

times during the term of this agreement as is, where is, and [AT&T] has no responsibility for its condition or state of repair except as set forth in the clause REPLACEMENT OF EQUIPMENT. [ARA] agrees not to remove it from [AT&T's] premises, to properly maintain it, and to return it to [AT&T] upon expiration or termination of this agreement or at such earlier time as [AT&T] may request, in the same condition as when received by [ARA], fair wear and tear excepted. Such use by [ARA] of the equipment shall be controlled by the clause entitled INSURANCE AND INDEMNITY.

. . . .

GENERAL - [AT&T] shall provide [ARA] with a cafeteria containing a kitchen, a serving area, and a dining area equipped with the appliances, fixtures, chinaware, glassware, flatware, trays, dining tables, and chairs listed on the attached inventory, together with the heat, hot and cold water, and utility services that may reasonably be required for the efficient performance of [ARA's] obligations under this agreement, and adequate, sanitary toilet facilities and dressing rooms for [ARA's] employees. Except as otherwise provided in this agreement, [AT&T] shall also furnish building and equipment maintenance, pest control, and janitorial services for the cafeteria, including the washing of walls, ceilings, filters, hoods and ducts of any ventilation systems in the kitchen, and, in the dining areas, table pedestals and chairs, and sweeping, mopping, stripping and refinishing floor area (exclusive of the area behind the serving counter). [AT&T] shall have full access, at all times, to the cafeteria premises and equipment with or without notice.

. . . .

[ARA] shall wash all cafeteria chinaware, glassware, flatware, trays, and utensils and wash or otherwise clean all kitchen equipment and all floors (except those which [AT&T] has agreed to wash or otherwise clean); remove garbage to the place [AT&T] shall designate; have all necessary laundering done; and wash all table tops in the dining area, and, during serving hours, keep all chair upholstery wiped clean.

In her amended petition, Brown alleged that AT&T was negligent in failing to repair or otherwise divert leaks from fixtures and equipment when AT&T knew or should have known of the leakage, which failure allowed water to accumulate on the floor at or near Brown's work station. She further alleged that AT&T failed to remove the accumulated water when it knew or should have known of the accumulated water on the floor.

AT&T's answer alleged that Brown had failed to state a cause of action and that Brown's exclusive remedy was against her employer for workers' compensation benefits. AT&T claimed it was entitled to the same defenses at law as Brown's employer.

AT&T moved for summary judgment, which the district court granted, and Brown appeals.

## ASSIGNMENTS OF ERROR

Brown makes three assignments of error: (1) The district court erred in failing to hold that AT&T, as an owner in control of a premises where work performance under a contract with the owner is to be executed, is to exercise reasonable care to keep the premises in a safe condition; (2) the court erred in failing to hold that AT&T, as a possessor of land thus retaining control, is subject to liability for personal injuries to business visitors caused by a natural or artificial condition if AT&T knows, or by the exercise of reasonable care could discover the condition which, if known to AT&T, it should realize as involving an unreasonable risk of harm to the invitee; and (3) the court erred in failing to hold that where the principal, AT&T, is primarily liable, through acts or omissions of persons unconnected to the agent, ARA, the principal's liability is not derivative from the agency employment relationship, and the doctrine of respondeat superior does not apply.

## ANALYSIS

ARA was an independent contractor hired to operate AT&T's cafeteria and vending machines, and Brown was an employee of ARA. As a result of her injuries, Brown received workers' compensation benefits from ARA. Therefore, ARA was released from any further liability for Brown's injuries. The Nebraska Workers' Compensation Act is an employee's exclusive remedy

against an employer for an injury arising out of and in the course of employment, and as such, payment of workers' compensation benefits relieves the employer of tort liability in connection with the accident. See *Tompkins v. Raines*, 247 Neb. 764, 530 N.W.2d 244 (1995).

An issue remains as to whether the payment of workers' compensation benefits by ARA also discharged any liability on the part of AT&T. Whether AT&T has been relieved of liability through the release of ARA depends on the nature of AT&T's liability in this case.

Generally, in a situation where two persons are not actively joint tort-feasors, but one person commits the tort and is primarily liable while the liability of the other person is secondary, the releasor's acceptance of satisfaction from one discharges the other as well. See *Ericksen v. Pearson*, 211 Neb. 466, 319 N.W.2d 76 (1982). This is true because secondary liability does not indicate a degree of negligence, but, rather, a kind of wrong and a legal obligation which is imputed or constructive only, being based on some legal relation between the parties or arising from some positive rule of common or statutory law, such as under the doctrine of respondeat superior. See *Duffy Brothers Constr. Co. v. Pistone Builders, Inc.*, 207 Neb. 360, 299 N.W.2d 170 (1980).

Thus, when an independent contractor is primarily liable and any liability of an owner is derived solely from the actions of its independent contractor, the protection of the workers' compensation laws that forms the sole remedy against the independent contractor also releases the owner from liability. See, *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994); *Horvath v. M.S.P. Resources, Inc.*, 246 Neb. 67, 517 N.W.2d 89 (1994); *Ashby v. First Data Resources*, 242 Neb. 529, 497 N.W.2d 330 (1993); *Plock v. Crossroads Joint Venture*, 239 Neb. 211, 475 N.W.2d 105 (1991), *overruled in part, Hynes v. Hogan*, 251 Neb. 404, 558 N.W.2d 35 (1997).

However, if there is evidence that the owner was directly or independently negligent through acts or omissions of persons unconnected to the independent contractor, the payment of workers' compensation arising from the independent contractor's employment does not release the owner from liability. See,

*Anderson v. Nashua Corp., supra; Ashby v. First Data Resources, supra.*

Brown argues that AT&T was directly and independently negligent in failing to repair the leaking fixture and failing to remove the accumulated water which caused her to slip and fall. In other words, Brown contends that AT&T's liability was not derivative or secondary and that, therefore, the payment of workers' compensation benefits to Brown by ARA did not relieve AT&T of tort liability in connection with her accident.

In contrast, AT&T contends, in essence, that any liability possibly attributable to it was secondary because it had relinquished control of the cafeteria and its fixtures to ARA and because ARA had expressly accepted the direct obligation to repair all equipment and provide janitorial services. In granting summary judgment, the district court cited *Plock v. Crossroads Joint Venture, supra,* as being determinative. In *Plock,* the owner had relinquished actual control over day-to-day operations of a shopping mall to an independent contractor who was responsible for maintaining and repairing the premises. Under those circumstances, we held that where the employee of the independent contractor was injured as a result of a failure to maintain the premises or repair a patent defect, the liability of the owner was derived solely from the liability of the independent contractor. Therefore, the payment of workers' compensation benefits by the independent contractor relieved the owner of liability.

We thus consider whether AT&T had delegated to ARA responsibility for the repair and replacement of the appliances and for janitorial duties. If it had not, then AT&T would be primarily liable for the breach of such duties if, in fact, the breach caused Brown's injuries.

First, we consider the alleged duty to repair the leaking fixture. Brown does not allege that the appliances furnished were defective, but, rather, alleges that AT&T was negligent in failing to repair the leaks or otherwise divert the leakage. The contract between AT&T and ARA provides:

> [ARA] agrees to indemnify [AT&T] for any claim made by [ARA's] employees, or by any other persons, for personal injury or property damage arising out of [ARA's] use

of the equipment, which [ARA] agrees to accept at all times during the term of this agreement as is, where is, and [AT&T] has no responsibility for its condition or state of repair except as set forth in the clause REPLACEMENT OF EQUIPMENT. [ARA] agrees not to remove it from [AT&T's] premises, to properly maintain it, and to return it to [AT&T] upon expiration or termination of this agreement . . . .

The clear language of the contract does not require AT&T to assume the duty to monitor and repair the equipment used by ARA and its employees. Rather, the contract clearly delegated that duty to ARA. Brown does not allege any active negligence on the part of AT&T with regard to the fixtures, nor does she contend that the fixtures constituted a latent defect. Thus, it is clear that ARA would not actively be a joint tort-feasor with AT&T, but, instead, ARA would be primarily liable for any failure to monitor and repair the fixture. Any liability of AT&T for failure to monitor and repair the allegedly leaking fixtures would be derived solely from the liability of ARA, and the payment of workers' compensation benefits relieved such liability.

We next consider whether, under the facts of this case, AT&T could be primarily liable for failing to remove the accumulated water. Under the language of the contract, AT&T incurred the duty to furnish janitorial services "for the cafeteria, including the washing of walls, ceilings, filters, hoods and ducts of any ventilation systems in the kitchen, and, in the dining areas, table pedestals and chairs, and sweeping, mopping, stripping and refinishing floor area (exclusive of the area behind the serving counter)." The contract further provided that ARA had the duty to "wash or otherwise clean all kitchen equipment and all floors (except those which [AT&T] has agreed to wash or otherwise clean)."

AT&T claims that "[p]ursuant to the contract, ARA was responsible to clean the floors behind the serving counter while, AT&T was obligated to clean the remaining areas." Brief for appellee AT&T at 10. It also claims that the evidence fails to pinpoint the exact location of Brown's fall, but contends that the deposition of Henry Davidson, Jr., manager of purchasing and transportation for AT&T, establishes that AT&T was not respon-

sible for cleaning in the area where Brown fell. It argues that since Brown did not rebut Davidson's testimony, AT&T is entitled to summary judgment.

Davidson testified that the contract in question was in effect in September 1988 and that prior to this contract period, AT&T had a contract with Midwest Maintenance Company (Midwest) to provide janitorial services in the cafeteria. He then stated: "We terminated that contract at — during this period . . . and arranged with ARA to provide that service themselves, and the service was provided." His recollection was that ARA then contracted out to Midwest itself.

Because this is an appeal from a summary judgment, we review the evidence in a light most favorable to the party against whom the judgment was granted and give such party the benefit of all reasonable inferences deducible from the evidence. See *Moulton v. Board of Zoning Appeals*, 251 Neb. 95, 555 N.W.2d 39 (1996). The party moving for summary judgment has the burden of showing that no genuine issue as to any material fact exists and that such party is entitled to judgment as a matter of law. *Bruning v. Law Offices of Ronald J. Palagi*, 250 Neb. 677, 551 N.W.2d 266 (1996). A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. At that point, the burden of producing evidence shifts to the party opposing the motion. *O'Connor v. Kaufman*, 250 Neb. 419, 550 N.W.2d 902 (1996).

Giving Brown all reasonable inferences regarding the evidence, we find no material issue of fact in dispute as to whether AT&T had any contractual obligations for janitorial services. The unrebutted testimony was that prior to the contract with ARA, AT&T had a contract with Midwest to provide janitorial services in the cafeteria. AT&T terminated that contract and arranged with ARA to provide that service. At this point, the burden shifted to Brown to rebut the fact that AT&T had transferred this responsibility for janitorial services to ARA. See *id.*

Brown did not sustain this burden. Although where Brown fell is a fact in dispute, the undisputed facts do not establish that AT&T had any contractual duty to provide janitorial services in the cafeteria area. Therefore, AT&T is entitled to judgment as a matter of law.

## CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED.