Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/29/2024 09:06 AM CDT

Lewis H. Evert and Trudy N. Evert,
appellants, v. Joseph E. Srb and
Marilyn E. Srb, appellees.

___ N.W.3d ___

Filed October 22, 2024.    No. A-23-771.

1. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting error to be considered by the appellate court.
2. **Easements: Equity.** An adjudication of rights with respect to an easement is an equitable action.
3. **Injunction: Equity.** An action for injunction sounds in equity.
4. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. But when credible evidence is in conflict on material issues of fact, the court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of facts over another.
5. **Easements: Real Estate: Conveyances.** An easement by implication from former use arises only where (1) the use giving rise to the easement was in existence at the time of the conveyance subdividing the property, (2) the use has been so long continued and so obvious as to show that it was meant to be permanent, and (3) the easement is necessary for the proper and reasonable enjoyment of the dominant tract.
6. ____: ____: ____. In determining an implied easement by former use, courts must look to the time of the conveyance subdividing the property that first brought into question whether an implied easement was created.
7. **Injunction.** An injunction is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury. Such a remedy should not be granted unless the right

is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice.

Appeal from the District Court for Lincoln County: Michael E. Piccolo, Judge. Affirmed.

Lindsay E. Pedersen, Attorney at Law, P.C., L.L.O., for appellants.

Brian T. McKernan and Alexander K. Shaner, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellees.

Riedmann, Chief Judge, and Pirtle and Welch, Judges.

Riedmann, Chief Judge.

## INTRODUCTION

Lewis H. Evert and Trudy N. Evert (collectively the Everts) appeal from the order of the district court for Lincoln County that denied and dismissed their request for an order enjoining Joseph E. Srb and Marilyn E. Srb from interfering with the Everts' rights under an easement, denied and dismissed their request for an order enjoining the Srbs from interfering with the Everts' access to their land via a gate on the Srbs' land, and determined that the Everts did not have an easement by implication from former use to portions of the Srbs' land. Although our analysis differs from that of the district court, we affirm its order.

## BACKGROUND

Lewis and Marilyn are brother and sister. Along with their late brother John Evert, they purchased land in Lincoln County, Nebraska, in 1996. The land had previously been under common ownership, but the parties decided to divide the land into six sections, with each sibling receiving two sections. Although other family members had some ownership rights, for our purposes, it is sufficient to know that Lewis owned Sections 24 and 25, John owned Sections 13 and 30, and Marilyn owned Sections 18 and 19. The diagram below, entered into evidence

at trial for demonstrative purposes, shows the section place-
ment and ownership after the parties divided the land.



Starting in 1996, Lewis and John used the land to raise
cattle. The Srbs did not initially have cattle, but Lewis and
John would use the trail roads on Sections 18 and 19 just as
they used the trail roads on the sections they owned. They also
used a portion of Section 18 as a calving pasture. The Srbs
eventually got cattle, and although the Srbs kept their cattle
on their own sections, Lewis and John would help with vacci-
nating, breeding, calving, and putting up hay. They sometimes

acted as a joint farm operation, but the parties kept their finances separate.

In 2005, the Srbs filed a lawsuit against the Everts and John to determine the proper boundary lines of Section 19. The parties eventually settled, which resulted in the Everts and the Srbs granting each other reciprocal easements to access each other's property for purposes of installing, maintaining, and repairing the common fence they shared. The Srbs granted the Everts an easement to enter on Section 19 for this purpose. The Srbs also granted John an easement to their land for fence repair, along with an extended easement for John to use the trail roads on Sections 18 and 19.

In 2018, the Everts filed this action against the Srbs, alleging the Srbs had interfered with their reciprocal easement. They requested the district court to enter an injunction prohibiting the Srbs from obstructing or attempting to obstruct their access to Section 19. The Everts also alleged that they had an easement by implication from former use to cross Sections 18 and 19 to access a portion of land on Section 24 referred to as "the Bowl" through what was known as "Beer Can Gate." They requested the district court enter an injunction prohibiting the Srbs from interfering with this access to the Bowl.

At trial, Lewis and Marilyn testified, and several exhibits were entered into evidence. The evidence revealed that Lewis and John had access to all the sections, including the trail roads, from the time of purchase until the 2005 lawsuit. After the 2005 lawsuit was settled, Lewis would access the trail roads on Sections 18 and 19 with John because John had an easement to do so. Although the Srbs placed locks over the gates on the boundary fence between Sections 18 and 19, John was given a key to one of the gates because of his easement.

Considerable testimony was heard regarding Lewis' ability to access the area referred to as the Bowl. The Bowl, located in Section 24, is a flat area surrounded on three sides by tall hills, canyons, and trees. Prior to 2005, Lewis would drive through Beer Can Gate on Section 18 and access the Bowl

approximately five or six times a year. After 2005, Lewis accessed the Bowl through Beer Can Gate only when he was with John, since John's easement allowed this. Since John died, Lewis has not used Beer Can Gate to access the Bowl area. Lewis explained that he needed to drive a truck and trailer into the Bowl to spray for noxious weeds but the only way he could drive into the Bowl was by entering on the east side, through Beer Can Gate. Lewis also believed the only way to check the fence he shared with Section 19 was through Beer Can Gate, unless he walked or rode a horse. Although there is no actual road from Beer Can Gate to Section 24, there was pastureland that Lewis had driven on to reach Section 24 from Beer Can Gate.

On the fence between Sections 19 and 24, there were three gates: the north, middle, and south gates. Lewis testified that the north and middle gates were locked, but the reasons he described for needing to pass through them were unrelated to fence maintenance. Marilyn disputed that the middle gate was locked at the time of trial.

The district court found that the Everts had failed to establish an easement by implication from former use, noting that although Lewis accessed Section 24 via Section 18 prior to the 2005 lawsuit, he failed during the settlement to request an easement to continue this practice. It found that Lewis had only accessed the Bowl on a couple of occasions since the 2005 lawsuit. Finally, although Lewis testified of the need to access the Bowl with a vehicle to spray for weeds, the district court noted that there was testimony that aerial spraying had been done in the past, which called into question whether an easement was necessary for reasonable enjoyment of the land. The Everts filed a motion to alter or amend or, in the alternative, for new trial. Following a hearing, the district court denied the motion. The Everts appeal.

## ASSIGNMENTS OF ERROR

The Everts assign, renumbered, consolidated, and restated, that the district court erred in (1) determining that the Everts

did not have an easement by implication from former use to the trail roads running on Sections 18 and 19 to access Beer Can Gate and to reach the Bowl on Section 24, (2) denying the Everts injunctive relief prohibiting the Srbs from interfering with this implied easement, and (3) denying them injunctive relief preventing the Srbs from interfering with the Everts' ability to access Section 19 pursuant to the terms of their reciprocal easement.

[1] Although the Everts assign that the district court erred in denying their motion to alter or amend or, in the alternative, for new trial, they do not argue this assigned error. As such, we will not address it. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting error to be considered by the appellate court. *In re Interest of Quiotis C.*, 32 Neb. App. 932, 9 N.W.3d 224 (2024).

## STANDARD OF REVIEW

[2] An adjudication of rights with respect to an easement is an equitable action. *Arnold v. Arnold*, 24 Neb. App. 99, 884 N.W.2d 450 (2016).

[3] An action for injunction sounds in equity. *ConAgra Foods v. Zimmerman*, 288 Neb. 81, 846 N.W.2d 223 (2014).

[4] On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Arnold v. Arnold, supra.* But when credible evidence is in conflict on material issues of fact, the court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of facts over another. *Id.*

## ANALYSIS

*Easement by Implication From Former Use.*

[5] The Everts assign that the district court erred in determining that they failed to prove an easement by implication from former use to the trail roads on Sections 18 and 19 to

access Beer Can Gate and to reach the Bowl on Section 24. An easement by implication from former use arises only where (1) the use giving rise to the easement was in existence at the time of the conveyance subdividing the property, (2) the use has been so long continued and so obvious as to show that it was meant to be permanent, and (3) the easement is necessary for the proper and reasonable enjoyment of the dominant tract. *Arnold v. Arnold, supra*. Because we conclude the Everts did not produce evidence regarding the use of the alleged easement at the time of the conveyance subdividing the property, their claim for an implied easement from implication of former use fails.

At trial, there was testimony that the property was acquired from a single owner in 1996 and was then divided by the siblings. The record is unclear whether the Srbs initially bought all of the land and then loaned Lewis and John the money to buy their shares, or if all three siblings were the initial purchasers. Regardless, there was no evidence of how the land was used while under common ownership. To establish an easement by implication from former use, as will be discussed more fully below, we look to how the land was being used at the time it was conveyed to separate owners.

There was evidence presented that trail roads existed at the time the land was conveyed from the common owner to the parties here. The Everts argue that when the land was purchased in 1996, it was easily recognizable that the trail roads provided access to all sections. However, Lewis described that once he exited the main trail road, he had to drive through pastureland to get to Beer Can Gate. There has never been any type of gravel or maintained road from the main trail road to Beer Can Gate. This negates a finding that at the time of conveyance, the trail roads on Sections 18 and 19 were being used to access Beer Can Gate and the Bowl on Section 24. Further, there was no evidence presented regarding whether the various gates discussed were already installed at the time the siblings purchased the property or if they were added later.

The evidence did not establish the use of the land and trail roads at the time the land parcels were conveyed from one owner to multiple owners.

During the trial, the parties focused primarily on the use of the trail roads *after* the land was purchased and the sections were divided among them. Lewis testified that the land was divided into its current ownership "[a]t the beginning" and that he would use the trail roads on Sections 18 and 19 the same way he used the roads on the sections he owned. There was also testimony on the use of the roads after the settlement was reached in the 2005 lawsuit. Lewis stated that after the 2005 lawsuit, he did not continue to travel through Sections 18 and 19 until John obtained an easement to do so. From that point on, Lewis traveled the trail roads on Sections 18 and 19 only when he was with John. Lewis had traveled on Section 18 without John on only one occasion since 2005.

[6] The use of the land after the 1996 division is not the relevant period to consider in determining an implied easement by former use; rather, courts must look to the time of the conveyance subdividing the property that first brought into question whether an implied easement was created. See *O'Connor v. Kaufman*, 250 Neb. 419, 550 N.W.2d 902 (1996).

In *O'Connor v. Kaufman, supra*, a tract of farmland was under common ownership until January 29, 1975, at which time parcel A, which contained a house, and parcel D, which contained a well, pump, and pipeline, were deeded to separate individuals. For decades prior to the transfer, the well supplied water to the house on parcel A. *Id*. Subsequent transfers of both parcels occurred thereafter, but for the most part, the well continued to supply water to the house on parcel A. *Id*. In 1991, the then owners of parcel D removed the well, pump, and pipeline. The owner of parcel A filed suit, seeking an implied easement from former use. In determining whether an implied easement existed, the Nebraska Supreme Court stated that we must look to the time of the conveyance subdividing the property that first brought into question whether an

implied easement was created. *Id*. It determined that date was January 29, 1975. *Id*.

Likewise, in *Arnold v. Arnold*, 24 Neb. App. 99, 884 N.W.2d 450 (2016), this court looked to the way the property had been used while under common ownership to determine whether an implied easement by former use existed when the land was divided. In *Arnold*, a father owned farmland that he leased in separate lots to his sons. One son used the underground pipeline contained on the other son's land to irrigate his crops. *Id*. When the father passed away, the separate lots were conveyed to the sons and a dispute arose as to the use of the pipeline. *Id*. In determining whether the first element of an implied easement by former use was met, we looked to the time the lots were conveyed following their father's death. *Id*. We determined that because the pipeline was being used to service the other lot prior to that date, the first element was met. *Id*.

In the present case, the record is void of any use of the trail roads at the time the land was divided among the siblings. Lewis, after confirming that the land was divided into the ownership of the sections between the siblings in 1996, testified that thereafter, he would "go through 18 and 19 just as well we did 13 and 24." The evidence presented was sufficient to establish that *after* the division of the land in 1996, Lewis and John would use the trail roads on Sections 18 and 19. However, this is insufficient to establish that the use being sought existed at the time of the conveyance subdividing the property. As the Everts did not present evidence to establish the first element of an implied easement by former use, their claim fails.

The district court determined that the Everts failed to prove the continuity of use and its necessity, but we need not reach those elements, having found a lack of proof to the first element. Although our reasoning differs from that of the district court, we agree with the district court that the Everts failed to prove an implied easement from former use.

*Injunctive Relief Related to Bowl Access.*

The Everts assign that the district court erred in deny-ing their request for an injunction preventing the Srbs from obstructing or attempting to obstruct the Everts' access to the Bowl. We agree with the district court that the Everts failed to prove entitlement to such relief.

[7] An injunction is an extraordinary remedy and ordinar-ily should not be granted except in a clear case where there is actual and substantial injury. Such a remedy should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Lambert v. Holmberg*, 271 Neb. 443, 712 N.W.2d 268 (2006).

The testimony regarding access to the Bowl focused mainly on Lewis' need to access the Bowl to spray for noxious weeds, specifically thistles. He had not accessed the Bowl to spray for thistles since 2005. Lewis testified that since 2005, he had twice used aerial spraying to control the weeds, but that the cedar trees in the Bowl prevented the spray from reaching all the thistles. He stated that if he did not spray for weeds, the county would do it and he would be financially responsible. However, Lewis admitted he had never received any notices or complaints from the county with respect to weeds in the Bowl.

The Everts have failed to show that irreparable harm would occur if they were not granted the injunctive relief sought. The evidence showed that Lewis had used aerial spraying to control the weeds in the Bowl twice since 2005 and that he had never received any notices or complaints from the county. Based upon this evidence, we cannot conclude there would be irreparable damage, or any damage at all, if he could not access the Bowl via the trail roads on Sections 18 and 19. The district court did not err in denying injunctive relief on this basis.

*Injunctive Relief Related to Reciprocal Easement.*

The Everts assign that the district court erred in failing to grant their request for injunctive relief to prevent the Srbs from obstructing their reciprocal easement to enter Section 19.

Based on our review of the evidence, we find the reciprocal easement does not provide for the access the Everts seek.

As stated above, injunctive relief should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Lambert v. Holmberg, supra.* The parties' settlement of the 2005 lawsuit resulted in the Everts and the Srbs granting each other reciprocal easements. The Srbs granted the Everts "an easement to enter on said Section 19 to install, maintain and repair the common fence between said Sections 19 and 24." The Everts' complaint alleged that the Srbs were interfering with their use and enjoyment of the easement by relocating a gate on the fence line, padlocking another gate, and putting a combination lock on a third gate. On appeal, they argue that

> evidence plainly and simply shows instances wherein the Srbs have frustrated Everts [sic] ability to use the ease-ment by forcing Everts to use a gate they installed just west of the gate previously used on the trail road ease-ment on the Sections 18/19 trail road thereby forcing Everts off and around the easement . . . .

Brief for appellant at 27.

The reciprocal easement, however, did not grant use of any specific gate to access Section 19 and did not include an ease-ment on Section 18. The evidence established there were three gates on the fence between Sections 19 and 24. The north gate was locked, presumably by Marilyn; the parties disputed whether the middle gate was locked; and Lewis never used the south gate, which was unlocked. Lewis' testimony was that he had used the north gate to drive animals from one pasture to the next and needed access to the middle gate to spray for thistles. Neither task is related to installing, maintaining, or repairing the boundary fence.

There was very little, if any, testimony that the locks on the gates impaired Lewis' ability to utilize the reciprocal ease-ment to install, maintain, and repair the common fence. The reciprocal easement did not provide access for the work he

sought to perform; therefore, the Everts failed to establish a clear right to the access they sought. Additionally, we cannot conclude that the Srbs have interfered with the Everts' ability to use the easement for the purpose for which it was granted. Consequently, their actions did not cause damage, let alone irreparable damage, which would entitle the Everts to injunctive relief.

## CONCLUSION

We find that the Everts did not establish an easement by implication from former use or entitlement to injunctive relief. We therefore affirm the district court's order dismissing the Everts' claims.

Affirmed.