IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VIKKISU J. V. WHITTLESEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

VIKKISU J., APPELLEE,

V.

RICKY A. WHITTLESEY, APPELLANT.

NATALIE S., APPELLEE,

V.

RICKY A. WHITTLESEY, APPELLANT.

Filed January 7, 2025.    Nos. A-24-340, A-24-341.

Appeals from the District Court for Nemaha County: JULIE D. SMITH, Judge. Affirmed.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

No brief for appellees.

RIEDMANN, Chief Judge, and PIRTLE and ARTERBURN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

At issue are two separate domestic abuse protection orders entered against appellant. The appellant challenges the district court's finding that he abused the victims as defined by Neb. Rev. Stat. § 42-903 (Supp. 2023). He also asserts that the restriction on firearm possession contained in the orders violates his Second Amendment rights. For the reasons set forth below, we affirm the district court's orders.

- 1 -

## II. BACKGROUND

In interwoven and interdependent cases, an appellate court may examine its own records and take judicial notice of the proceedings and judgment in a former action involving one of the parties. See *Doerr v. Chaffee*, 29 Neb. App. 766, 960 N.W.2d 604 (2021). We also are able to take judicial notice of a document filed in an appeal, in a separate but related action, concerning the same subject matter as the current appeal in the same court. See *id*. We may take judicial notice of the record on appeal in a companion case which has been consolidated for appeal with the instant case. *Holste v. Burlington Northern RR. Co*., 256 Neb. 713, 592 N.W.2d 894 (1999).

Here, the district court for Nemaha County entered protection orders against the appellant in favor of his ex-wife and her daughter. Both cases before us concern the same series of events, and the records from both cases contain facts germane to the claims raised in both appeals. In resolving these claims, we therefore rely on the contents of both records.

### 1. PARTIES

At the time of the incident giving rise to the protection order, Ricky A. Whittlesey had been divorced from his ex-wife, Vikkisu J., for over a decade but they had been living together again for approximately 7 months. Also at the time, Natalie S., Vikkisu's daughter, and Natalie's girlfriend, Kaitlyn V., had been living in Whittlesey's garage for multiple weeks.

### 2. PETITIONS AND AFFIDAVITS FOR PROTECTION ORDERS

On March 8, 2024, Natalie and Vikkisu each filed petitions and affidavits to obtain domestic abuse protection orders against Whittlesey pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2024). Natalie's petition alleged she was a victim of domestic abuse and had lived with Whittlesey in the past. Vikkisu's petition stated she was a victim of domestic abuse and had been previously married to Whittlesey.

Vikkisu's petition and affidavit alleged that, on March 2, 2024, while at Whittlesey's house, Kaitlyn told Whittlesey that he could not force Vikkisu to live there. Whittlesey "yell[ed]" at Kaitlyn and "tried to chock [sic] her" while shoving his thumbs in her mouth. In an effort to defend herself, Kaitlyn bit Whittlesey's thumbs and hit him in the nose. Natalie attempted to separate them and the police were called.

Both Natalie's and Vikkisu's petitions and affidavits collectively alleged the following. Approximately 2 hours after the initial altercation, Natalie and Vikkisu returned to Whittlesey's house and were attempting to remove Natalie's television from a mount in the living room. In the process, Vikkisu's elbow knocked over a clock that was sitting on a shelf.

Whittlesey yelled at Vikkisu, and Natalie replied, "you don't need to yell at my mom." In response, Whittlesey pulled out a gun, checked to see if it was loaded, turned off the safety, and pointed it at Natalie. Whittlesey then blocked Natalie and Vikkisu from leaving the house. Natalie was fearful for her and her mother's lives. After Natalie and Vikkisu were able to exit the house, police were called, and Whittlesey was arrested.

On March 8, 2024, the district court issued ex-parte domestic abuse protection orders for both Natalie and Vikkisu. Whittlesey requested show cause hearings on both protection orders.

## 3. Show Cause Hearings

Consecutive show cause hearings occurred on April 3, 2024. In their respective hearings, after being sworn in by the court, Natalie and Vikkisu testified that the contents of their petitions and affidavits were true, and the court received the documents into evidence. Whittlesey was sworn in and testified on his own behalf.

### (a) Whittlesey

Throughout both show cause hearings, Whittlesey testified to the following. Whittlesey and Vikkisu had been married during 2012 and 2013. During the parties' marriage, Natalie had lived with Whittlesey and Vikkisu for about 1 month and, approximately 6 months later, Natalie lived with them for another brief period.

In the 10 years following their divorce, Vikkisu had continued to be a part of Whittlesey's life and, in August 2023, Vikkisu moved into Whittlesey's home. They resided there together until March 2024. As of March, Natalie and Kaitlyn had been living in Whittlesey's garage and were paying him rent. Natalie and Kaitlyn, however, were in the process of moving into a nearby house, and Vikkisu wanted to move in with them.

Whittlesey claimed he had been assaulted by Natalie and Kaitlyn. He recounted Kaitlyn had bit him and punched him in the face multiple times, and Natalie had kicked him; his nose and toe had been broken and his thumb had been injured.

After the assault, Whittlesey asked Vikkisu to "make sure the kids didn't come back in the house again." However, later that day, Vikkisu returned to the house with Natalie. Whittlesey was afraid Natalie would assault him again and reminded Vikkisu that Natalie was not allowed in the house. He also asked Natalie to leave; she did not comply.

When Natalie and Vikkisu began removing Natalie's television from a shelf in Whittlesey's living room, they were having trouble removing it from the supports, which were screwed into the shelf. Vikkisu accidently knocked a clock off the shelf, and when Natalie and Vikkisu pulled on the television, they ripped the screws out of the shelf.

After Whittlesey "got on" Vikkisu about breaking things, Natalie began to yell and approached him. He was "concerned" he was going to be assaulted again and pulled a firearm from the side of his chair. He racked open the gun and set it down on his lap. He denied the gun was ever pointed at Natalie directly, but "kind of in [her] direction."

At no time did Whittlesey believe Vikkisu was concerned about her safety or welfare, as he did not threaten her at the time, nor had there been any physical violence nor threats thereof in their relationship previously.

### (b) Natalie

Natalie testified that the March 2, 2024, altercation began because Vikkisu wanted to move out of Whittlesey's home. Contrary to Whittlesey's testimony, he had "approached" Kaitlyn during the ensuing argument.

When Natalie and Vikkisu returned to the house later that day to retrieve the television, Vikkisu accidentally knocked over a clock, and Whittlesey began yelling at her. Natalie said, "you don't need to yell at my mom." Whittlesey responded, "You want to play games like that?" He pulled out a gun, cocked it, pushed it down, the gun closed, and Whittlesey pointed it at Natalie.

According to Natalie, she was scared for her life. Vikkisu then stood in front of Natalie because Vikkisu thought Whittlesey would not shoot her, but he would shoot Natalie. Whittlesey got up from his chair and pointed the gun at Natalie and Vikkisu.

During the show cause hearing, the district court made a finding that Natalie qualified as a "family member" for purposes of the Protection from Domestic Abuse Act under Neb. Rev. Stat. § 42-901 *et. seq.* (Reissue 2016, Cum. Supp. 2022, and Supp. 2023) (the Act).

After Natalie's testimony, Whittlesey was recalled by his counsel and testified he had never made threats to shoot Natalie. Natalie objected, telling the court she had "never said that he threatened to shoot [her.]"

### (c) Vikkisu

Vikkisu testified that on the day of the incident, Whittlesey was attempting to convince Natalie and Kaitlyn that Vikkisu did not need to move with them into their new house. Although Whittlesey claimed to have been assaulted by Natalie and Kaitlyn, Kaitlyn was sitting on the couch when Whittlesey "came at" her and began choking her while putting his thumbs in her mouth. Kaitlyn bit his thumb in self-defense, and Whittlesey's toe was broken by Natalie's attempt to "get him off of Kaitlyn." Following this altercation, the police were called, and Whittlesey was charged with misdemeanor assault.

Later that day, when Natalie and Vikkisu returned to Whittlesey's house and were removing the television, Vikkisu knocked over a clock. Whittlesey stated, "Oh, we're going to play like that, Vikki." When Natalie interjected in Vikkisu's defense, Whittlesey picked up his gun from beside his chair and pointed it at Natalie.

Natalie and Vikkisu tried to leave through the back door, but Whittlesey blocked the doorway. After Vikkisu asked, Whittlesey moved out of the way and Natalie and Vikkisu left the house. Natalie contacted the police and Whittlesey was arrested.

On cross-examination, Vikkisu conceded that Whittlesey had never assaulted or threatened her before, and that her petition for the protection order did not specifically state that she was afraid of Whittlesey. Vikkisu also explained that, while she thought Whittlesey was pointing the gun at Natalie, she and Natalie were "very close" to one another in a "small area."

### 4. DISTRICT COURT'S ORDERS

Following the show cause hearings, the district court entered orders affirming both ex-parte domestic abuse protection orders. The protection orders prohibit Whittlesey from having any contact with Natalie and Vikkisu, and from owning or possessing a firearm, until March 9, 2025.

In Natalie's case, the court found Whittlesey had pointed a firearm at Natalie, which constituted a credible threat placing Natalie in reasonable fear of bodily injury. Further, it found it was unreasonable for Whittlesey to believe pointing the gun at Natalie was necessary for his protection and rejected Whittlesey's self-defense argument.

In Vikkisu's case, the court relied on the holding in *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019), reasoning that, while Natalie was the target of Whittlesey's credible threat, "a protection order may be issued to protect another member of the target's family if the target would reasonably fear for his or her safety."

Whittlesey separately appealed both protection orders; neither Natalie nor Vikkisu filed an appellee's brief. By order of this Court, the cases were consolidated for disposition.

## III. ASSIGNMENTS OF ERROR

In both cases, Whittlesey challenges the sufficiency of the evidence, the denial of his self-defense theory, and the constitutionality of restricting his right to possess a firearm. Because his specific assignments as to the sufficiency of the evidence differs for each appellee, we address those separately; however, we address the denial of his self-defense theory and his constitutional argument together.

## IV. STANDARD OF REVIEW

A protection order pursuant to § 42-924 is analogous to an injunction; thus, the grant or denial of a protection order is reviewed de novo on the record. *Rachel C. on behalf of Clayton R. v. Amos R.*, 32 Neb. App. 473, 1 N.W.3d 528 (2023). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the district court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the district judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Nebraska's Protection from Domestic Abuse Act allows a victim of domestic abuse to obtain a protection order against a member of his or her household upon a showing of abuse before the district court. *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014). Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by § 42-903, a protection order may not remain in effect. See, §§ 42-903, 42-924, and 42-925; *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). Whether abuse has occurred and whether the movant for the protection order qualifies as a victim of domestic abuse is governed by statute. See § 42-903.

Section 42-903(1) defines abuse as

the occurrence of one or more of the following acts between family or household members:

(a) Attempting to cause or intentionally and knowingly causing bodily injury[;]

(b) Placing, by means of credible threat, another person in fear of bodily injury[;] or

(c) Engaging in sexual contact or sexual penetration without consent[.]

We turn now to Whittlesey's specific assignments of error as they separately relate to Natalie and Vikkisu.

### (a) Natalie

Whittlesey assigns the evidence was insufficient to establish that (1) Natalie was a family member as defined by statute, (2) he engaged in domestic abuse of Natalie by engaging in an

intentional act that caused or credibly threatened bodily injury, and (3) a protection order was warranted.

*(i) Natalie as Family Member*

Whittlesey argues that the times he and Natalie resided together were of short duration and over 10 years prior to the filing of Natalie's petition and affidavit; thus, the § 42-903(3) provision including persons who have lived together in the past would not logically apply to his and Natalie's past living arrangements. However, it is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute. See *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024).

Section 42-903(3) defines family or household members to include

spouses or former spouses, children, persons who are presently residing together or who have resided together in the past, persons who have a child in common whether or not they have been married or have lived together at any time, other persons related by consanguinity or affinity, and persons who are presently involved in a dating relationship with each other or who have been involved in a dating relationship with each other.[]

The plain language of § 42-903(3) includes "persons . . . who have resided together in the past," and does not contain limitations or parameters for its application that consider the length of time, nor how far in the past, parties resided together.

It is undisputed Natalie and Whittlesey lived together in the past. At the show cause hearing, Whittlesey testified that Natalie lived with him and Vikkisu "briefly on two occasions back in 2012, 2013 . . . [for] maybe a month . . . then maybe six months after that she lived with [them] briefly."

Whittlesey has not provided us with any authority which requires us to limit the provisions of § 42-903 to more recent or lengthy living arrangements. Therefore, we refuse to do so and, relying on the plain language of the statute, we find the evidence is sufficient to determine Natalie is a family member for purposes of the Act. We reject this assignment of error.

*(ii) Credible Threat Toward Natalie*

Whittlesey assigns that the evidence was insufficient to establish that he engaged in domestic abuse of Natalie by engaging in an intentional act that caused or credibly threatened bodily injury. He does not dispute that pointing a gun at someone would likely place him or her in reasonable fear of bodily injury. Rather, Whittlesey argues the insufficiency of the evidence as it relates to whether his brandishing of a firearm was "privileged" self-defense. Brief for appellant at 9.

Whether the brandishing of the gun was self-defense does not negate the fact that such action constituted a credible threat of bodily injury as defined by the Act. At the show cause hearing, Natalie testified that she feared for her life when Whittlesey pointed the gun at her. Therefore, Natalie carried her burden of proof that Whittlesey threatened her with bodily injury by means of a credible threat.

Although Whittlesey makes a general assignment of error that the evidence was insufficient to affirm the protection order, he does not make any corresponding argument. Therefore, we need not address it. See *Evert v. Srb*, 33 Neb. App. 244, 13 N.W.3d 728 (2024) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court). To the extent that Whittlesey relies upon self-defense as a theory to defeat the affirmance of the protection order, we address this argument later in the opinion.

## (b) Vikkisu

Whittlesey assigns the evidence was insufficient to establish that (1) he engaged in domestic abuse of Vikkisu and (2) a protection order was warranted. He also assigns the district court erred (3) in finding any threat he made toward Natalie was sufficient to establish abuse of Vikkisu and (4) "in failing to find that [he] engaged in an intention [sic] threat of bodily injury to [Natalie]."

### *(i) Domestic Abuse of Vikkisu*

Although assigned as separate errors, Whittlesey combines his sufficiency of the evidence claim into one assertion that Vikkisu failed to prove he posed a credible threat to her. He argues that Vikkisu offered no evidence that she was subject to any physical injury or was threatened in any manner by Whittlesey. He denies that the brandishing of a firearm toward Natalie constitutes a credible threat to Vikkisu.

In its order affirming the protection order in favor of Vikkisu, the district court stated:

The Court finds that [Whittlesey] pointed a firearm at Natalie [] and that under the circumstances it was not reasonable for him to believe that doing so was necessary for his protection. This was a credible threat which placed [Vikkisu] in fear of bodily injury. The target of the threat was Natalie []; however, a protection order may be issued to protect another member of the target's family if the target would reasonably fear for his or her safety. *Robert M. on behalf of Bello* [sic] *O. v. Danielle O.*, 303 Neb. 268 (2019).

*Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019), provides that not only is the recipient or target of a credible threat a "victim" of abuse entitled to a domestic abuse protection order under § 42-924, so too are those family members for whose safety the target reasonably fears because of the threat. Under this view, an individual may be a victim of a credible threat if the target of the credible threat is caused to reasonably fear for that other individual's safety and the other elements of a credible threat are present. See *Robert M. on behalf of Bella O. v. Danielle O., supra*. Indeed, it would make little sense if a credible threat caused the target to fear for the safety of his or her family members, but only the target was a victim of abuse eligible to file for a protection order. *Id*.

Here, Vikkisu's petition and affidavit did not allege that Whittlesey had pointed the gun at her. She also clarified at the show cause hearing that although it was "a small area," she believed Whittlesey was pointing the gun at Natalie. She confirmed he had never previously threatened or assaulted her. However, Whittlesey threatened Natalie by means of a credible threat; pursuant to *Robert M. on behalf of Bella O. v. Danielle O., supra*, this threat caused Natalie, as the target, to

- 7 -

reasonably fear for the safety of Vikkisu. Natalie asserted in her affidavit in support of the protection order that she "was scared for [her] life and my mothers [sic] life." She affirmed the veracity of these statements at the show cause hearing.

Moreover, Natalie testified that while Whittlesey was pointing the gun, Vikkisu stood in front of her to protect her. She also stated that Whittlesey continued to point the gun while blocking Natalie and Vikkisu from exiting the house. It follows that once Vikkisu stood in front of Natalie, Whittlesey would have been pointing the gun at Vikkisu.

Based on the evidence, we conclude Natalie's fear for Vikkisu's safety was reasonable. Thus, relying on the holding in *Robert M. on behalf of Bella O. v. Danielle O., supra*, we reject Whittlesey's argument that the district court erred in finding his threat to Natalie was sufficient to constitute abuse of Vikkisu.

### (ii) Affirmance of Protection Order

Although Whittlesey makes a general assignment of error that the evidence was insufficient to affirm the protection order, as above, he does not make any corresponding argument. Therefore, we need not address it. See *Evert v. Srb*, 33 Neb. App. 244, 13 N.W.3d 728 (2024) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

### 2. SELF-DEFENSE

In both appeals, Whittlesey assigns that his brandishing of the gun constituted self-defense and therefore the protection orders could not be issued against him. To successfully assert the claim of self-defense, one must have a both reasonable and good faith belief in the necessity of using force. *State v. Adams*, 33 Neb. App. 212, 12 N.W.3d 114 (2024). Further, the force used must be immediately necessary and must be justified under the circumstances. *State v. Miller*, 281 Neb. 343, 798 N.W.2d 827 (2011).

Neb. Rev. Stat. § 28-1409(1) (Reissue 2016) generally provides the use of force upon or toward another person is justifiable only if the actor believes that such force is "immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." Section 28-1409(4) states that the use of deadly force shall not be justifiable unless the actor believes that such force is necessary to protect himself or herself against death, serious bodily harm, kidnapping, or sexual intercourse compelled by force or threat.

Whittlesey argues he was assaulted by Natalie, and later brandished the gun to prevent being assaulted again, constituting self-defense. We reject this argument based on the disproportionality between brandishing a gun and whatever threat Natalie may have posed.

Furthermore, the evidence is conflicting as to whether Whittlesey or Kaitlyn was the aggressor during the initial incident. In any event, Kaitlyn was not present when Whittlesey brandished the gun; rather, he appears to have done so in response to Natalie's purely verbal remarks and her possible "approach" toward him. The evidence before us is sufficient to support the district court's finding that the force used by Whittlesey was unnecessary and unjustified under the circumstances.

Whittlesey further argues that, if his use of force was based on an unreasonable belief of necessity, his actions would then be considered reckless or negligent. He asserts that the Act

requires "an intentional credible threat" and his "reckless or negligent" acts fall short of being intentional. Brief for appellant at 10. Whittlesey misreads the statute.

Section 42-903(1)(a) defines abuse to include "attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument." Section 42-903(1)(b), however, does not include an intentional component. Rather, it defines abuse to include "Placing, by means of credible threat, another person in fear of bodily injury." Here, the brandishing of the gun constituted the credible threat; there is no requirement of any particular mental state to find an action constitutes abuse by means of a credible threat. See, also, *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024) (court will apply plain meaning of statute). We therefore reject Whittlesey's assignment of error regarding self-defense.

### 3. CONSTITUTIONAL RIGHT TO POSSESS FIREARM

In both appeals, Whittlesey assigns as error the provision contained in both protection orders enjoining him from owning or possessing a firearm. He argues the provision is unreasonable and a violation of his Second Amendment rights, and requests we modify the orders to remove the restriction. While we have doubts regarding the validity of his argument in light of *United States v. Rahimi*, 602 U.S. 680, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024), we decline to address the merits of this argument because Whittlesey has failed to properly raise his constitutional claim on appeal.

Regardless of whether a litigant explicitly challenges a statute, Neb. Ct. R. App. P. § 2-109(E) (rev. 2024) applies if the resolution of the appeal necessitates the determination of the constitutionality of a statute. See *State v. Catlin*, 308 Neb. 294, 953 N.W.2d 563 (2021). Because § 42-924 provides that a court may issue a protection order enjoining the respondent from possessing or purchasing a firearm, we read Whittlesey's assignments of error as challenging the constitutionality of this statute.

When raising a challenge to a Nebraska statute on appeal, any party who asserts such a statute is unconstitutional must file and serve notice thereof with the Clerk of the Supreme Court and, if the Attorney General is not already involved in the action where the constitutionality of the statute is in issue, the brief asserting unconstitutionality must be served on the Attorney General. See § 2-109(E). The Nebraska Supreme Court has emphasized the requirement of "strict compliance" with this section for constitutional questions to be considered on appeal. *SID No. 596 v. THG Development*, 315 Neb. 926, 938, 2 N.W.3d 602, 614 (2024).

Because Whittlesey is implicitly challenging § 42-924, he was required to strictly comply with the provisions of § 2-109(E). However, the record before us shows that Whittlesey has failed to file a notice of his constitutional question with the Clerk of the Supreme Court and to serve the Attorney General with his brief in both appeals. We therefore decline to consider the merits of this assigned error.

### VI. CONCLUSION

For the reasons set forth above, we reject Whittlesey's assigned errors in both appeals and affirm the orders of the district court affirming the protection orders in favor of Natalie and Vikkisu.

AFFIRMED.